## Porter's Admr. et al. v. Dulin Oil Company et al.

(Decided January 15, 1932.)

SAM M. WILSON and GROVER C. THOMPSON for appellants.

A. T. W. MANNING for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The Dulin Oil Company was a Kentucky corporation with an authorized capital stock of $99,000 divided into shares of $1 each. Only some sixty-odd thousand dollars of the stock was ever issued, and at the time of the transactions here involved the assets of the corporation consisted of four oil and gas leases of an aggregate of some 680 acres in Clay county, Ky., and a lot of iron piping. On one of the leased tracts a well had been drilled which produced some gas, but it was never marketed or attempted to be marketed, and its production was comparatively small.

On March 6, 1930, there was a stockholders' meeting held in the office of the company in Lexington, Ky., at which there was represented, in person or by proxy, more than two-thirds and more than three-fourths of the issued stock. At that meeting a board of directors was elected, a part of whom were former directors, but the others supplanted prior ones, and the elected directors qualified and also held a meeting on that same day upon the adjournment of the stockholders' meeting to March 29, 1930. At that meeting of the newly elected directors the various officers of the company were filled. The company prior to that meeting was, not only in debt for lease rentals and other matters in comparatively small amounts, but it was not realizing dividends or making profits for its stockholders, and there was no prospect of ever doing so, notwithstanding lease rentals, and perhaps other expenses, were constantly accumulating. Therefore, the question of selling the entire assets of the com-

pany and dissolving the corporation had been considerably agitated and an offer had been made for the property and assets of the company by the Freeman Gas Company at a price of $5,000, and a motion was made and carried by what defendants contend was the requisite majority of stock (but which plaintiffs denied) at the stockholders' meeting on March 6, 1930, to accept that offer, but it was never carried out, and for that reason it will not be necessary to further refer to it.

At that same meeting J. W. Porter, a prior director, and one of the minority stockholders who filed this action, made an offer for the same property at a price of $5,500, which he later (and before March 29, 1930, the adjourned meeting date of the stockholders and directors) increased to $6,000. But neither offer made by him was for a sale to himself individually, but to himself as "agent and attorney." He declined to state the name of his principal, but, whether for that or some other reason, neither one of his offers was ever accepted by the stockholders or the directors. Three days before the adjourned meeting was to be held on March 29, 1930 (and on March 26, 1930), the minority stockholders, who are the plaintiffs herein, addressed a written communication to the stockholders, directors, and officers of the Dulin Oil Company, and also to the company itself, which was signed by each of them, and opposite their names was placed the amount of stock held by each subscriber, which aggregated 10,170 shares. That written communication, excluding address, date, and signatures, reads:

"We the undersigned owners of the number of shares of stock in the Dulin Oil Company, set opposite our respective names, in accordance with section 883b-3 of Kentucky Statutes, hereby consent that the offer of J. W. Porter to pay $6,000.00 for all of the property, franchises, rights and other assets of Dulin Oil Company be accepted, and petition the remaining stockholders and all of the directors and officers of Dulin Oil Company to accept said offer for the reason that such offer exceeds the offer of $5,000.00 heretofore made by Freeman Gas Company, and exceeds the offer heretofore made by J. W. Porter in the sum of $5,500.00, and hereby notify all of the remaining stockholders or directors and officers of Dulin Oil Company, individually and in their official capacity, that we will oppose and

resist the sale of the assets of said corporation for any sum less than said sum of $6,000.00.''

In the meantime Joseph Greenspon's Sons Iron & Steel Company, a Missouri corporation (and hereinafter referred to as such), had submitted an offer to pay $6,000 for the assets of the company and which bid by it was made prior to the increased offer of J. W. Porter as agent and attorney to pay the same amount therefor. But, whether the offer of the Missouri corporation was made before or after the last offer of Porter is, as we conclude, immaterial to the solution of the questions presented. After March 29, 1930, there were successive meetings of both the stockholders and of the directors of the Dulin Oil Company, but at which no business of importance was transacted, and the meetings would be adjourned to a future day at which the same proceedings would be taken. But, in the meantime, it will be remembered that a large majority of the stockholders at the meeting on March 6 had consented to a sale of the entire assets of the corporation at a price not below $5,000, and which was never withdrawn at subsequent meetings by any of those stockholders.

Finally, and at an adjourned meeting, held on June 6, 1930, the board of directors reported a sale of the assets to the Missouri corporation at the amount of its offer of $6,000, and which had been collected and conveyances executed, the proposition having been accepted by the directors at a meeting held on April 17, 1930. At the meeting on June 6, 1930, they directed the payment of the outstanding debts of the corporation and a distribution among the stockholders of the remaining amount of the purchase money in proportion to the stock held by each. The plaintiffs declined to accept their pro rata of the remainder, or any part of the purchase price, and later brought this equity action in the Fayette circuit court against the majority stockholders, the corporation, its officers, the Missouri corporation, and the Freeman Gas Company, and in their petition they set out at great length and with meticulous detail every action and step of the corporation at its various stockholders' and directors' meetings, and alleged among other things that: (a) The meeting of the stockholders of March 6, 1930, was not validly called; (b) some of the directors elected at that meeting were ineligible because the stock held by some of them had not been properly

transferred on the books of the corporation, or had not been substituted by new certificates of stock issued to them, and perhaps other reasons; (c) that under the provisions of section 883b-3 of our present Statutes as many as three-fourths of the owners of the issued capital stock of the corporation must consent, either at a meeting of the stockholders, *or in writing,* to the sale of all of the property of the corporation, and that the sale in this case of the assets of the Dulin Oil Company by its directors to the Missouri corporation was invalid, because, as claimed, the consent of the holders of that number of shares of the stock of the Dulin Oil Company had not been obtained in either of the ways required by the statute, and (d) that the directors exceeded their authority in paying some of the debts of the corporation out of the proceeds of sale, and for which reason such acts were ultra vires.

Other supposed material facts are to be found in the petition and lengthily amplified in briefs; but those above classified are the major and decisive ones, and plaintiffs in their petition prayed for the appointment of a receiver for the corporation and that when done he be instructed to take charge and possession of the corporate property that had been theretofore conveyed to the Missouri corporation, and to oust its possession given to it by that conveyance, and that he be directed to file appropriate legal proceedings to cancel and annul such conveyance, and that when done the court adjudge a sale of the property of the corporation for the purpose of paying its debts and winding up its affairs, and for such other relief to which the plaintiffs were entitled. The answer denied the material facts averred in the petition and resisted all of the relief which plaintiffs sought therein. Following pleadings and motions made the issues, and upon final submission, after extensive proof taken, the court dismissed the petition, and to reverse that judgment plaintiffs prosecute this appeal.

Before taking up the merits of the case as above outlined, it might be proper to state that after the filing of this action Porter increased his former $6,000 offer, made before the attacked sale to the Missouri corporation, to $7,200, which, of course, was $1,200 more than the amount realized by that sale, and which divided among the holders of the issued stock would be less than two cents per share, a sum almost too insignificant to justify

this action to realize it, even if the offer had been made at a time that it was the duty of the board of directors to consider it. But having been made after the sale by the directors to the Missouri corporation pursuant to authority given by the stockholders, if legal, it was entirely too late and can have no effect upon the merits of the questions involved.

It might also be appropriately stated in advance of the determination of the merits that it has not fallen to our lot thus far in our experience as members of this court to come in contact with such manifested determination and apparent interest on the part of litigants to succeed in their contentions as is shown and exhibited by plaintiffs in this case, when the amount that would be realized if they were crowned with success would not exceed a mere nominal sum. An explanation, however, is to be found in the pleaded and proven fact, that each and all of Porter's offers were made exclusively as agent for the Petroleum Exploration Company, a competitor in the distribution of natural gas of the Missouri corporation to whom the conveyance herein was made. Not only so, but it was uncontradictedly proven by Porter himself, and perhaps others of his associates, that the Petroleum Exploration Company had given an advance agreement to defray all of the expenses of this litigation, including attorneys' fees, and that none of the plaintiffs were to incur any outlay in its prosecution regardless of its result, and which agreement on its part smacks largely of unlawful maintenance, if indeed it is not unqualifiedly committed.

However, we will neither discuss nor determine that question in this opinion, nor its effect if answered in the affirmative upon the merits of this litigation, since our construction of the writing hereinbefore inserted which was executed by plaintiffs and delivered to the addressees on March 26, 1930, gave their consent to the sale of the property of the Dulin Oil Company so as to satisfy the requiremenst of section 883b-3, supra, of our Statutes, and the amount of stock owned and represented by them, plus the amount owned by those consenting to the sale at the meeting on March 6, 1930, and other subsequent adjourned meetings, was largely more than three-fourths of the issued stock of the Dulin Oil Company, and which authorized the sale by its directors to the Missouri corporation. Having said so much, we will now proceed to

consider and determine as briefly as possible the classifications, supra, of the grounds relied on for the relief sought by plaintiff in their petition.

(a) We find no merit in contention (a), but if there were defects even to the extent of fatality in some prior action to the assembling of the stockholders' meeting on March 6, 1930, no objection thereto was made and much more than three-fourths of the issued stock was represented thereat, and plaintiffs participated in it as though it had been regularly called and at which very nearly if not a full three-fourths vote of the represented stock consented to the sale of the assets of the corporation at the price of $5,000, and which, of course, would be a consent for such a sale at a price higher than that sum, and which was later obtained from the Missouri corporation.

(b) Neither do we conclude it to be necessary to discuss at length the arguments made in support of contention (b), i. e., that some of the elected directors at the stockholders' meeting of March 6, 1930, were ineligible for any of the various reasons stated in the petition, although it may be said in passing that we very much doubt the efficacy of the argument made in support of any of them. The reason for such conclusion is that the elected directors became *de facto* ones and no legal steps were ever taken to oust them of such position, and their official acts while in office cannot be attacked by this collateral proceeding; or if it could be and the attack was successful, it would not operate to nullify an executed transaction with an innocent third party without knowledge of such disqualifications. 14a C. J. 78, sec. 1839, and 7 R. C. L. 435, sec. 424. The text in the first publication says: "The acts of de facto officers and directors are valid as to third persons." And the cited volume of R. C. L. in speaking upon the same subject says: "It is well settled that the acts of de facto officers of a private corporation are binding as to a third person who deals with them in ignorance of their want of legal right to the office." A great number of cases are cited to each text, and we are cognizant of no pronouncement by a court or text writer to the contrary, and we will not lengthen this opinion by further elaboration of the subject.

(c) This brings us to a consideration of contention (c) made in the petition, and which if determined in the affirmative, i. e., that three-fourths or more of the stock-

holders of the Dulin Oil Company consented to the attacked sale in one or the other methods pointed out in section 883b-3, supra, of the Statutes, it necessarily results that the attacked sale in this case to the Missouri corporation was legally made and should not be disturbed for any of the reasons therefor set forth in the petition. The solution of that question depends exclusively upon the proper interpretation of the executed notice in writing of plaintiffs of date March 26, 1930, and delivered to the corporation and its officers and stockholders on that day, and which we have hereinbefore inserted. If that writing should be construed as a consent on the part of those who executed it to a sale of the assets of the Dulin Oil Company at the price of $6,000, then the amount of stock represented by the subscribers thereof, plus the amount of stock consenting to the sale at a stockholders' meeting, on March 6, 1930, would aggregate considerably more than three-fourths of the issued stock of the corporation and would constitute a full compliance with the section of our statute supra, all of which is conceded by diligent and researchful counsel for plaintiffs in their lengthy briefs filed in this court. But they contend that the writing referred to was a limited consent, i. e., to a sale only to J. W. Porter for the amount of $6,000, and that, consequently a sale to any other person for the same or a higher price would be to a nonconsented to purchaser, and that, since they contend that the owners of three-fourths of the issued stock did not consent to the sale at any stockholders' meeting, the statute was not complied with and the sale was void.

Directing now, our attention to the language of that writing, it will be observed that it was prepared and delivered "in accordance with section 883b-3 of Kentucky Statutes," and for which reason the subscribers "hereby consent that the offer of J. W. Porter to pay $6,000.00 (for all the property, etc.) be accepted . . . for the reason that such offer exceeds the offer of $5,000.-00 heretofore made by Freeman Gas Company, and exceeds the offer heretofore made by J. W. Porter in the sum of $5,500.00." The subscribers also urged therein the remaining stockholders to accept Porter's $6,000 offer for the same reason, and then finally notified the addressees that they "will oppose and resist the sale of the assets of said corporation (Dulin Oil Company) for any sum less than said sum of $6000.00." It will thus

be seen that the only reason why Porter's name, or his offer, was ever mentioned in that writing was because his offer was the highest one that they thought at that time had ever been made for the property proposed to be sold. His name was not mentioned therein because of any reasons for preferring him as a purchaser over any other one who would pay the same or a greater amount; but, we repeat, his offer was referred to only because it exceeded any offer theretofore made so far as the subscribers knew.

If we should stop the analysis of that writing at this point, we are convinced that a correct construction of it would favor a general and not a limited consent to a sale; but when there is added thereto the persuasive effect of the additional language, that petitioners will oppose and resist the sale of the assets of the corporation for any sum less than $6.000.00, the conclusion is inevitable that they thereby consented to a sale of such assets for that or a higher sum. To our minds there is no escape from that conclusion, and the belabored efforts of learned counsel fail to convince us to the contrary. The language last referred to was only a notification of opposition and resistance to a sale, only in the event that it was for less than $6,000.00, and which carried with it indisputable implication that a sale for that sum or a greater one, would not be opposed or resisted, and which is tantamount to saying that "we consent to a sale of the assets of our corporation by you, provided you realize a price equal to or greater than $6,000.00." When so construed, we repeat, the necessary three-fourths of the issued stock legally consented to the attacked sale, although it be conceded that such amount was not obtained at the stockholders' meeting as plaintiffs contend, but which according to them lacked only a few hundred shares of being that amount of the total stock issued. Therefore, it becomes unnecessary for us to discuss or to determine the question raised as to whether or not such a small number of shares did or did not consent to the sale at the stockholders' meeting; for, as we have hereinbefore said, the 10,170 shares owned by the stockholders who subscribed the writing we have just analyzed, plus those who concededly consented at the meeting, makes the number of consenting shares greater than three-fourths of the total issued. Having so concluded, all other questions discussed in

briefs and incorporated in the pleadings become unimportant, and for which reason they will neither be referred to nor discussed.

(d) Contention (d) may be quickly disposed of, for if it should be admitted that the directors did not properly distribute the proceeds of the sale, and that they paid debts that were not due to be paid from the assets of the corporation, it would not affect the sale but would only give plaintiff the right to employ appropriate proceedings against the derelict directors, and perhaps the persons they wrongfully paid, to correct the wrong, but in no event could such action by them be given the effect of nullifying the sale so as to entitle plaintiffs to any of the relief sought by the petition. This is not a case where the innocent purchaser is required to see to the application of the proceeds of the purchase.

Wherefore, for the reasons stated, the judgment is affirmed.