INTERNATIONAL PLACE APARTMENTS-IV v YPSILANTI TOWNSHIP

Docket No. 164423. Submitted December 19, 1995, at Detroit. Decided
March 29, 1996, at 9:05 A.M. Leave to appeal sought.

International Place Apartments-IV petitioned the Tax Tribunal for res-
olution of a dispute concerning Ypsilanti Township's determination
of the 1988 assessed value of the petitioner's property. The town-
ship had sought to increase the assessed value it had previously
assigned to the property, alleging that a clerical error had resulted
in the underassessment of the property. The Ypsilanti Township
Board of Review had changed the assessment in accordance with
the respondent's request. The Tax Tribunal concluded that the error
was not a clerical one, but one of professional judgment, and,
therefore, the respondent was not empowered to change the
assessment under MCL 211.53b; MSA 7.97(2). The respondent
appealed.

The Court of Appeals *held*:

The Tax Tribunal properly found that the misfiling that caused
the wrong assessment figure was not a clerical error correctable
under MCL 211.53b; MSA 7.97(2). The statute's reference to a cleri-
cal error or mutual mistake is directly referenced to the use of the
correct assessment figures, the taxation rate, and the mathematical
computation relating to the assessment of taxes. Thus, the statute
refers to errors of a typographical, transpositional, or mathematical
nature. The mistake here was not limited to recording a number
incorrectly on the assessment rolls or performing a mathematical
error in arriving at the final assessment figure. Rather, the figure
recorded on the assessment rolls was accurate in the sense that it
was the number intended by the assessor, although the assessor
may have erred in determining the figure by failing to consider all
the relevant facts. The Tax Tribunal properly found that § 53b does
not permit a reappraisal or reevaluation through the use of new or
existing data of any type. Section 53b does not pertain to cases,
such as this, where the assessor fails to consider all relevant data,
even if the root of the assessor's error may have been a ministerial
mistake such as the misfiling of a document.

Affirmed.

TAXATION — CLERICAL ERRORS — ASSESSMENT AMOUNT.

> Section 53b of the General Property Tax Act allows for the correction of clerical errors of a typographical or transpositional nature with regard to the correct assessment figures applicable to a taxpayer's property, but does not permit a reappraisal or reevaluation through the use of new or existing data of any type and does not apply to cases where the assessor fails to consider all relevant data, even if the root of the assessor's error may have been a ministerial mistake such as the misfiling of a document (MCL 211.53b; MSA 7.97[2]).

*Honigman Miller Schwartz & Cohn* (by *Jerome M. Salle* and *Gerard Mantese*), for the petitioner.

*Miller, Canfield, Paddock & Stone* (by *Robert F. Rhoades* and *Joanne B. Faycurry*), for the respondent.

Before: CAVANAGH, P.J., and SAWYER and R. L. TEMPLIN,* JJ.

SAWYER, J. Respondent appeals from a judgment of the Tax Tribunal in favor of petitioner concerning a dispute over the 1988 assessed value of petitioner's property. We affirm.

The facts in this case are undisputed. Petitioner's apartment complex consisted of five buildings, numbered 18 through 22, containing 199 rental units. On December 31, 1986, respondent evaluated this complex and notified petitioner that the proposed assessed value was $388,900. This determination was acceptable to petitioner.

On March 15, 1988, respondent sent a letter to petitioner's manager, Mario Cardinali, which confirmed the amount of $388,900 as the final 1987 assessment and notified him of the proposed 1988 assessment of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

$480,340. Again, this determination was acceptable to petitioner.

On September 19, 1989, respondent sent a letter to petitioner indicating a proposal to change the 1988 assessment to $1,337,000. The letter explained that respondent's assessment office had made a clerical error that had resulted in the underassessment of petitioner's property. On December 5, 1989, the Ypsilanti Township Board of Review notified petitioner that it had changed the assessment in accordance with respondent's request.

Respondent's deputy assessor, Denise Mays, explained that respondent conducted annual field inspections regarding building permits. Respondent kept a file for active building permits. When making a property appraisal, an assessor would pull the building permit from this file. After reviewing the construction, the assessor would post the appraised value and enter it into respondent's computer. If construction of a building was complete, the building permit was filed elsewhere or discarded. If construction was not yet complete, the assessor would write the percentage of construction completed on the permit and return the permit to the active file.

Clair Simons, an assessor no longer working for respondent, conducted the field inspection of petitioner's property in December 1986. At that time, construction was not complete on petitioner's apartment buildings, so the building permit should have been filed in the active building permit file. Instead, the permit was filed in the field card file, where it should have gone only if construction was complete.

Construction was completed in March 1987, but respondent was unaware that a new field inspection

was required because the building permit was no longer in the active file. The added value of the completed construction, therefore, was not included in respondent's original determination of the property's value as of December 31, 1987, which was used for the 1988 assessment. Instead, respondent simply applied a five percent increase, as it did for all properties for which construction was completed. Had the permit been in the correct file, Mays testified, respondent would have been on notice that a field inspection and a new assessment were required.

Sam Guich took over as respondent's chief assessor in August 1988, and immediately began reappraising commercial property. Petitioner's property was assessed at $2,085,000 for 1989. Guich and Mays noticed the large difference between the 1988 and 1989 values and sought to determine the reason. In November or December of 1988, they discovered the building permits in the field card file and in July or August of 1989 found a letter from Simons to Cardinali in an inactive file for township apartment properties. That letter, dated February 5, 1987, indicated that all of buildings twenty and twenty-one and forty percent of building twenty-two were included in the assessment for 1987. According to Guich, buildings eighteen and nineteen were not constructed until late 1986 or early 1987, and Simons therefore did not include them. Guich decided that the filing error that resulted in petitioner's underassessment was clerical and, therefore, correctable under § 53b of the General Property Tax Act, MCL 211.53b; MSA 7.97(2). However, the Tax Tribunal concluded that the error was not a clerical one, but one of professional judgment,

and, therefore, the board of review was not empowered to change the 1988 assessment under § 53b.

Respondent first argues that the Tax Tribunal erred in concluding that the misfiling that caused the wrong assessment figure was not a clerical error correctable under § 53b. We disagree. Subsection 1 of § 53b provides in pertinent part as follows:

> If there has been a clerical error or a mutual mistake of fact relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes, the error or mutual mistake shall be verified by the local assessing officer, and approved by the board of review . . . . If the error or mutual mistake results in an overpayment or underpayment, the rebate shall be made to the taxpayer or the taxpayer shall be notified and payment made within 30 days of the notice. A correction under this subsection may be made in the year in which the error was made or in the following year only. [MCL 211.53b(1); MSA 7.97(2)(1).]

The parties refer to various cases from other jurisdictions and attempt to provide a definition for "clerical error." However, we agree with the tribunal that these cases are not helpful because they deal with different statutes and facts than those found in the instant case and, we would also note, the decisions reached disparate results. Similarly, respondent's reliance on *Spoon-Shacket Co, Inc v Oakland Co*, 356 Mich 151; 97 NW2d 25 (1959), is misplaced because that case was not decided under the statute at issue here, but under common-law equity principles. In fact, the current statute was added by 1967 PA 142.

Where the Legislature does not define a word, the ordinary meaning of the word applies and reference to a dictionary is appropriate to ascertain what the

ordinary meaning of the word is. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 469-470; 521 NW2d 831 (1994). Black's Law Dictionary (6th ed), p 252, defines "clerical error" as generally "a mistake in writing or copying." See also *Webster's Third New International Dictionary, Unabridged Edition* (1966), p 421; *Webster's New Twentieth Century Dictionary, Unabridged Edition* (1983), p 338. Furthermore, reading the statute in context, the reference to a clerical error or mutual mistake is directly referenced to use of the correct assessment figures, the taxation rate, and the mathematical computation relating to the assessment of taxes. MCL 211.53b; MSA 7.97(2). Thus, the statute itself refers to errors of a typographical, transpositional, or mathematical nature.

The mistake in the case at bar was not limited to merely recording a number incorrectly on the assessment rolls or performing a mathematical error in arriving at the final assessment figure. Rather, the figure recorded on the assessment rolls was accurate in the sense that it was the number intended by the assessor, albeit that the assessor may well have erred in the determination of what that number should be by failing to consider all relevant facts. In short, we agree with the Tax Tribunal that § 53b allows for corrections of clerical errors of a typographical or transpositional nature, but does not permit a reappraisal or reevaluation through the use of new or existing data of any type. That is, § 53b simply does not include cases where the assessor fails to consider all relevant data, even if the root of the assessor's error may have been a ministerial mistake such as the misfiling of a document.

Respondent also argues that the tribunal erred because petitioner bore the burden of proving the invalidity of the second assessment, yet offered no evidence to show that the assessment was unauthorized. Assuming, without deciding, that petitioner did bear the burden of establishing that the correction of the assessment figure was unauthorized, we are satisfied that petitioner has borne that burden. The facts not being in dispute with regard to how the mistake arose, it is simply a matter of statutory interpretation whether that mistake is correctable under the statute. We have concluded that it is not.

Affirmed. Petitioner may tax costs.