**Lansing, Michigan**

# Opinion

Chief Justice:                Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                               Marilyn Kelly
                               Stephen J. Markman
                               Diane M. Hathaway
                               Mary Beth Kelly
                               Brian K. Zahra

FILED JUNE 14, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHIGAN PROPERTIES, L.L.C.,

    Petitioner-Appellee,

v                                                    Nos. 143085, 143086,
                                                            and 143087

MERIDIAN TOWNSHIP,

    Respondent-Appellant.

---

TOLL NORTHVILLE LIMITED
PARTNERSHIP and BILTMORE
WINEMAN LLC,

    Petitioners-Appellants,

v                                                    No. 143281

NORTHVILLE TOWNSHIP,

    Respondent-Appellee.

---

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

The cases before us involve the proper interpretation of the General Property Tax Act (GPTA), MCL 211.1 *et seq.* In *Michigan Properties, LLC v Meridian Township*, we address whether a tax assessor's failure to adjust the taxable value of a parcel of real property in the year immediately following its transfer[1] precludes a March board of review from adjusting the taxable value in a later year.

We hold that the failure to adjust the taxable value in the year immediately following the transfer produced an erroneous taxable value because the taxable value was not in compliance with the GPTA. Further, the GPTA does not preclude a March board of review from correcting an erroneous taxable value that resulted from the failure of an assessor to adjust a property's taxable value in the year immediately following its transfer. Accordingly, we also hold that a March board of review may adjust the erroneous taxable value in a subsequent year in order to bring the current taxable value into compliance with the GPTA. The Court of Appeals held that the error in this case could not be remedied and, therefore, we reverse the judgment of the Court of Appeals and reinstate the Michigan Tax Tribunal's decision affirming the March board of review's correction of the tax rolls to reflect the properly adjusted taxable values.

Next, in *Toll Northville Limited Partnership v Northville Township*, we address whether the Tax Tribunal has the authority to reduce an unconstitutional increase in the taxable value of property when the erroneous taxable value was not challenged in the year of the increase.[2] We hold that the Tax Tribunal does have the authority to reduce an

---

[1] See MCL 211.27a(3).

[2] This appeal marks the second time that Toll Northville Limited Partnership and Northville Township have come before us with this dispute. In *Toll Northville Ltd v*

unconstitutional previous increase in taxable value for purposes of adjusting a taxable value that was timely challenged in a subsequent year. The Tax Tribunal Act[3] sets forth the Tax Tribunal's jurisdiction.[4] Once its jurisdiction is properly invoked, the Tax Tribunal possesses the same powers and duties as those assigned to a March board of review under the GPTA, including the duty to adjust erroneous taxable values to bring the current tax rolls into compliance with the GPTA. Because the Court of Appeals erroneously held that the Tax Tribunal did not have jurisdiction to review taxable values in years not under appeal, we reverse the Court of Appeals' judgment and remand to that Court to consider Northville Township's remaining issues on appeal regarding the Tax Tribunal's valuation of the properties.[5]

## I. *MICHIGAN PROPERTIES, LLC v MERIDIAN TOWNSHIP*

### A. FACTS AND PROCEDURAL HISTORY

Michigan Properties, L.L.C., purchased three apartment complexes located in Meridian Township in December 2004. Michigan Properties timely filed a required affidavit in January 2005, notifying Meridian's assessor of the transfers of ownership.

---

*Northville Twp*, 480 Mich 6, 13-14; 743 NW2d 902 (2008), we unanimously declared that the statutory provision allowing the value of the properties at issue to increase because of public-service improvements was unconstitutional.

[3] MCL 205.701 *et seq.*

[4] MCL 205.731.

[5] We will discuss each case separately. We begin with *Mich Props* because the issue in *Toll Northville* is predicated on whether a March board of review has the power to correct a previous erroneous taxable value.

3

Meridian's assessor failed to comply with MCL 211.27a(3)[6] by not adjusting, or "uncapping,"[7] the taxable values of the properties for tax year 2005 to reflect their posttransfer taxable values. As a result of this failure, the taxable values for tax year 2005 were entered into the tax rolls using pretransfer values that were not in compliance with MCL 211.27a(3).

In October 2006, Meridian sent a letter notifying Michigan Properties of the erroneous values. The letter informed Michigan Properties that it would receive a revised tax bill for tax year 2005 reflecting new taxable values because of the 2004 transfer and that the taxable values for tax year 2006 would be revised accordingly by Meridian's December board of review.[8] Litigation ensued, and the parties ultimately entered into a consent judgment for each property in February 2007 pertaining to tax years 2005 and 2006. The consent judgments stipulated that Meridian reserved the right to petition the March board of review for tax year 2007, or for any year thereafter, to uncap the properties' taxable values because of the transfers in December 2004. Meridian

---

[6] MCL 211.27a(3) provides: "Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer."

[7] After ownership of a property has been transferred, the taxable value of the property is "uncapped" and is subject to reassessment based on the property's actual value. *Klooster v City of Charlevoix*, 488 Mich 289, 297; 795 NW2d 578 (2011).

[8] The December board of review, however, took no action. Michigan Properties appealed Meridian's decision for tax years 2005 and 2006 in the Tax Tribunal. Michigan Properties argued that the time frame for challenging the 2005 taxable values, and any subsequent values based on the 2005 assessment, had expired because Meridian had not timely challenged the 2005 assessments when the 2005 values were first placed on the tax rolls.

4

subsequently exercised its right to petition the March board of review to adjust the 2007 taxable values. The March board of review granted Meridian's requested relief, uncapping the taxable values for tax year 2007 on the basis of the December 2004 transfers of ownership.[9]

Michigan Properties filed the instant appeals of those decisions in the Tax Tribunal, arguing that the time frame for challenging the 2005 taxable values, and any subsequent values based on the 2005 assessments, had expired because Meridian had not timely challenged the 2005 assessments. Meridian moved for summary disposition, arguing that the March board of review had acted within its authority to bring taxable values into compliance with the GPTA pursuant to MCL 211.29 and MCL 211.30. The tribunal granted Meridian's motion for summary disposition.

Michigan Properties appealed the Tax Tribunal's decision in the Court of Appeals. In a published decision, the Court of Appeals reversed the Tax Tribunal and held that the March board of review could not uncap the taxable values relating to the December 2004 transfers.[10] Meridian sought leave to appeal in this Court. We granted leave to appeal, directing the parties to discuss "whether the failure of the taxing authority's assessor to adjust the taxable value of real property in the year immediately after a transfer of the property in accordance with MCL 211.27a(3) precludes the board of review from

---

[9] Thus, 2007 is the only tax year before us in *Mich Props*. For tax year 2007, the total pretransfer taxable value for the three properties combined was assessed at $10,376,535. By including the uncapping based on the 2004 transfers, the March board of review adjusted the assessments for 2007 to a total taxable value of $14,905,107.

[10] *Mich Props, LLC v Meridian Twp*, 292 Mich App 147; 808 NW2d 506 (2011).

5

adjusting the taxable value in a later year." *Mich Props, LLC v Meridian Twp*, 490 Mich 877 (2011).

## B. STANDARD OF REVIEW

Review of decisions by the Tax Tribunal is limited. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. The Tax Tribunal's factual findings are final if they are supported by competent, material, and substantial evidence on the whole record. *Id.*; *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 482; 473 NW2d 636 (1991). If the facts are not disputed and fraud is not alleged, our review is limited to whether the Tax Tribunal made an error of law or adopted a wrong principle. *Meadowlanes*, 437 Mich at 482-483. The cases before us present a question of statutory interpretation, which this Court reviews de novo. *Wexford Med Group v City of Cadillac*, 474 Mich 192, 202; 713 NW2d 734 (2006). When interpreting statutes, this Court must "ascertain and give effect to the intent of the Legislature." *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002). In interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory. *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009), citing *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980). When considering the correct interpretation, the statute must be read as a whole. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). Individual words and phrases, while important, should be read in

6

the context of the entire legislative scheme. *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

## C.  ANALYSIS

### 1.  TAXABLE VALUES IN PROPOSAL A AND THE GPTA

The specific issue before us in *Mich Props* is whether the failure of a taxing authority's assessor to adjust the taxable value of real property in the year immediately following a transfer of the property, in accordance with MCL 211.27a(3), precludes a March board of review from adjusting the taxable value in a subsequent year.

Resolving this issue requires an analysis of the GPTA, which sets forth the parameters for determining taxable values of real property.  These parameters are a direct response from the Legislature to the limitations on taxable values established in Proposal A of 1994, which amended article 9, § 3 of Michigan's Constitution.[11]  In *Klooster*, we

---

[11] Proposal A amended Const 1963, art 9, § 3 to read as follows:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes.  The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments.  For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in [Const 1963, art 9, § 33], or 5 percent, whichever is less until ownership of the parcel of property is transferred.  When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value.  The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem

stated that "[t]he purpose of Proposal A was to limit tax increases on property as long as it remains owned by the same party, even though the actual market value of the property may have risen at a greater rate."[12]

Proposal A places a cap on the taxable value of a property so that, based on the previous year's taxable value, any yearly increase in taxable value is limited to either the rate of inflation or 5 percent, whichever is less.[13] That cap on taxable value applies only to the current owner of the property, and the property's taxable value is uncapped when the property is transferred. The uncapped taxable value for the year after the transfer sets a new baseline value that is subject to a new cap. The GPTA is the enabling legislation that carries out the edicts of Proposal A.[14]

The GPTA provides a comprehensive system for the assessment of property for ad valorem tax purposes and the collection of those taxes. It also provides for the administration of the system. When read in conjunction, MCL 211.27a(2) and (3) provide the statutory framework to implement the capping and uncapping mechanisms

---

taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates. A law that increases the statutory limits in effect as of February 1, 1994 on the maximum amount of ad valorem property taxes that may be levied for school district operating purposes requires the approval of 3/4 of the members elected to and serving in the Senate and in the House of Representatives.

[12] *Klooster*, 488 Mich at 296.

[13] Also, the valuation must be adjusted when there are additions or losses to the property that affect the property's value.

[14] *Id*. at 296-297.

required by Proposal A. To establish taxable values of property, MCL 211.27a contains parameters that comply with the requirements of Proposal A.

Unless a property's ownership has been transferred in the previous year, the calculation for the current taxable value is set forth in MCL 211.27a(2), which provides:

> Except as otherwise provided in [MCL 211.27a(3)], for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
>
> (b) The property's current state equalized valuation.

In short, MCL 211.27a(2) establishes that, except as otherwise provided in MCL 211.27a(3), the taxable value of property for each year after 1995 is the value reached after applying the formula in MCL 211.27a(2)(a) or the current state equalized value, whichever is less. Under MCL 211.27a(2), the current year's taxable value is directly predicated on the immediately preceding year's taxable value unless the current state equalized valuation is lower.

MCL 211.27a(3) sets forth an exception to the MCL 211.27a(2) calculation. It provides:

> Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer.

This language requires that when a property has been transferred, it must be valued at the state equalized valuation for the calendar year following the transfer. Accordingly, once

9

the property is transferred, its taxable value is no longer predicated on the previous year's taxable value; rather, it is "uncapped." This uncapping event sets a base valuation on which future taxable values will be determined.[15] Because MCL 211.27a(2)(a) is predicated on the previous year's taxable value, any error in the uncapping valuation carries the resulting erroneous taxable value over into future years.

The provisions establishing taxable values in MCL 211.27a(2) and MCL 211.27a(3) are both mandatory and automatic. Both subsections unambiguously provide that the taxable value for a property falling under each respective subsection "is" the value that results from the parameters contained in the applicable subsection.[16] Therefore, if the mandates from the applicable subsection were not followed when placing a property's assessment on the tax rolls for a given tax year, the resulting taxable value from that year would not be in compliance with the GPTA and would thus be erroneous as a matter of law.

---

[15] Valuations after uncapping will again be based on MCL 211.27a(2), until the next time that the property's ownership is transferred. MCL 211.27a(4).

[16] The pertinent language in MCL 211.27a(3) states that "the property's taxable value for the calendar year following the year of the transfer *is* the property's state equalized valuation . . . ." (Emphasis added.) The Court of Appeals' analysis implies that the phrase "calendar year following the year of the transfer" establishes a period of limitations during which MCL 211.27a(3) can be applied and that it cannot be applied to adjust a taxable value in years subsequent to the year immediately following a transfer. However, MCL 211.27a(3) does not contain a period of limitations. Rather, it sets forth that the state equalized value during the designated period of time—the year immediately following a transfer—is the basis for the uncapped taxable value. Thus, the purpose of MCL 211.27a(3) is to override the limitation in MCL 211.27a(2) when a property is transferred and allow the property's taxable value to "catch up" with the value of the property.

In *Mich Props*, Meridian's assessor failed to update the tax rolls to reflect the uncapped taxable values of Michigan Properties' recently purchased properties for tax year 2005. Because of this failure to uncap the taxable value, the taxable value as entered on the tax rolls for 2005 violated the automatic requirement in MCL 211.27a(3) that the taxable value for the year following the transfer "is" the uncapped value. As a result, the 2005 taxable values of the three properties at issue were erroneous.[17]

## 2. A MARCH BOARD OF REVIEW'S DUTIES AND POWERS

We must next determine whether the erroneous previous year's values can be corrected for purposes of adjusting the timely challenged 2007 taxable values. We hold that they can because a March board of review is authorized and required, pursuant to MCL 211.29 and MCL 211.30, to correct errors in valuation to bring taxable values into compliance with the GPTA. To hold otherwise would allow errors in taxable value to run with the property until the next transfer of ownership occurs. The Legislature clearly did not intend this result. Judging by the plain language of the GPTA, the Legislature intended that a township's March board of review have the power to bring previous erroneous taxable values back into compliance with the GPTA, as long as that power is only exercised to bring the taxable value in line with the GPTA for the current tax year.[18]

---

[17] Our conclusion does not mean that because a previous year's taxable value is erroneous, it is subject to correction for purposes of a property owner's tax obligation for that previous year.

[18] The facts before us in both cases are distinguishable from those presented in *Leahy v Orion Twp*, 269 Mich App 527; 711 NW2d 438 (2006). In *Leahy*, the Court of Appeals refused to allow a taxpayer's challenge to a property's taxable value from a previous year for purposes of adjusting a subsequent year's taxable value. The taxpayer in *Leahy* had already challenged that previous year's taxable value in the year that the value was

11

Our decision is limited to adjusting a current year's taxable value to prevent previous errors from running in perpetuity against the current taxpayer. While actions to collect or receive a refund of a previous year's taxes are subject to various limitations,[19] there are no such limitations within the GPTA prohibiting correction of a previous year's taxable value so that a taxpayer may receive relief for the tax year under appeal.

As noted earlier, the GPTA sets forth a comprehensive property tax system. Part of this system involves oversight and error correction by various entities.[20] In this system, assessors are responsible for assessing properties in accordance with various guidelines set forth in the GPTA.[21] However, once an assessment has been entered, an assessor is powerless to change that assessment.[22] If there is a challenge to an

---

entered, claiming that the taxable value was erroneous. The taxpayer's challenge went to the Tax Tribunal, which ruled against him, and the taxpayer did not appeal that decision. Accordingly, the Court of Appeals correctly concluded that the taxpayer was collaterally estopped from relitigating the issue. *Id*. at 530-531.

[19] See *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69; 780 NW2d 753 (2010) (holding that refund claims for previously paid taxes are subject to a 30-day limitations period unless a mutual mistake of fact occurred); see also MCL 211.53a (setting forth a three-year limitation on claims to collect a refund of previously paid taxes after a mutual mistake of fact occurred).

[20] See, e.g., MCL 211.53b (setting forth the process for the correction of "qualified error[s]") and MCL 211.34(4) (setting forth the process for appeals to the state tax commission regarding county equalization of taxes).

[21] MCL 211.10; MCL 211.10d(1); MCL 211.10e.

[22] In preparing assessments, an assessor is limited to using approved assessment manuals to carry out his or her duties. See MCL 211.10e.

assessment, or if an error is discovered, the GPTA provides various circumstances in which the error can be corrected and specifies who can correct the error.[23]

Meridian argues that the taxable values are subject to the March board of review's error-correction mechanisms found in MCL 211.29 and MCL 211.30, which set forth the duties and powers of all townships' March boards of review. MCL 211.29 provides, in pertinent part:

> (1) On the Tuesday immediately following the first Monday in March, the board of review of each township shall meet at the office of the supervisor, at which time the supervisor shall submit to the board the assessment roll for the current year, as prepared by the supervisor, and the board shall proceed to examine and review the assessment roll.
>
> (2) During that day, and the day following, if necessary, the board, of its own motion, or on sufficient cause being shown by a person, shall add to the roll the names of persons, the value of personal property, and the description and value of real property liable to assessment in the township, omitted from the assessment roll. *The board shall correct errors* in the names of persons, in the descriptions of property upon the roll, and *in the assessment and valuation of property. The board shall do whatever else is necessary to make the roll comply with this act*.
>
> (3) The roll shall be reviewed according to the facts existing on the tax day. The board shall not add to the roll property not subject to taxation on the tax day, and the board shall not remove from the roll property subject to taxation on that day regardless of a change in the taxable status of the property since that day.
>
> (4) The board shall pass upon each valuation and each interest, and shall enter the valuation of each, as fixed by the board, in a separate column. [Emphasis added.]

These provisions give a March board of review the authority and the duty to correct errors in taxable values. When an error is brought to the attention of a March

---

[23] See, e.g., MCL 211.29, MCL 211.30, MCL 211.34(4), and MCL 211.53b.

13

board of review, whether it is brought to the board's attention by another person or the board itself, the board must correct the error. Subsection (2) provides that "[t]he board shall correct errors . . . in the assessment and valuation of property."[24] A March board of review also has broad authority to correct a mistake in valuation because "[t]he board shall do whatever else is necessary to make the roll comply with this act."[25] This authority is further enforced by the language of MCL 211.30(4), which allows a March board of review to change an assessed or tentative taxable value as long as there is an opportunity for the person affected to file objections to any of the March board of review's changes.[26]

Most importantly, there are no limitations contained in the GPTA that would prevent a March board of review from considering previous erroneous taxable values when bringing current taxable values into compliance with the GPTA. Had the Legislature intended to preclude errors from being corrected in subsequent years, it would have included such a limitation. While MCL 211.29 and MCL 211.30 do not grant a March board of review the authority to alter a previous year's tax rolls, and thus

---

[24] MCL 211.29(2).

[25] *Id*.

[26] MCL 211.30(4) states in pertinent part:

> The board of review, on its own motion, may change assessed values or tentative taxable values or add to the roll property omitted from the roll that is liable to assessment if the person who is assessed for the altered valuation or for the omitted property is promptly notified and granted an opportunity to file objections to the change at the meeting or at a subsequent meeting.

14

alter previous tax obligations, a March board of review *does* have the power to correct previous errors *for the purpose of* updating the current year's tax rolls.

A March board of review has the power to review the tax rolls currently before it "according to the facts existing on the tax day." MCL 211.29(3). Among the facts existing on a current year's tax day would be the fact that a previous taxable value did not comply with the GPTA, and that fact is within the purview of the duties of the March board of review. Having considered the language of the GPTA, we agree with Meridian that the Legislature's directive to March boards of review to "do whatever else is necessary to make the roll comply with" the act includes correcting errors of law pertaining to taxable values that have carried over from previous years. By correcting previous errors of law for purposes of determining a current year's taxable value, a March board of review "make[s] the roll comply with" the GPTA.

Finally, allowing a March board of review to prospectively correct previous erroneous taxable values provides taxpayers and municipalities with meaningful review of a current year's taxes. It prevents an error in taxable value from being set in stone and perpetuating a deprivation of the constitutional protections set forth in Proposal A.[27]

---

[27] In the Court of Appeals opinion pertaining to *Toll Northville*, which was decided with two companion cases involving the same issue, the Court of Appeals relied on *Auditor General v Smith*, 351 Mich 162; 88 NW2d 429 (1958), for the proposition that a failure by a board of review to correct an erroneous value in a previous year precludes attack on that value in a subsequent year. *MJC/Lotus Group v Brownstown Twp*, 293 Mich App 1, 9; 809 NW2d 605 (2011). However, *Auditor General* was decided nearly 40 years before Proposal A was enacted in 1994. We now take the opportunity to clarify that *Auditor General* is limited to situations predating Proposal A, and thus it is not applicable to the cases before us.

15

Whether to prevent windfalls for taxpayers or municipalities,[28] the Constitution must be enforced, and deprivations of constitutional protections must be avoided.

In *Mich Props*, we hold that the March board of review correctly brought the 2007 taxable values into compliance with the GPTA by adjusting the current values because of the uncapping of the 2005 taxable values. The Court of Appeals incorrectly prevented the erroneous taxable values from being remedied until another uncapping event occurs. Accordingly, we reverse the judgment of the Court of Appeals in *Michigan Properties, LLC v Meridian Township*, and we reinstate the Tax Tribunal's decision affirming the March board of review's correction of the tax rolls to reflect the properly adjusted taxable values.

## II. *TOLL NORTHVILLE LIMITED PARTNTERSHIP v NORTHVILLE TOWNSHIP*

### A. FACTS AND PROCEDURAL HISTORY

This case raises the issue of whether the Michigan Tax Tribunal has the same powers and duties as a March board of review to adjust previously entered erroneous taxable values for purposes of bringing the current tax rolls into compliance with the GPTA. The underlying factual basis for the dispute between Toll Northville Limited Partnership and Northville Township[29] began in 2000 when Toll, a residential developer,

---

[28] As is evident from the cases before us, a failure to correct previous errors can either result in taxpayers being forced to pay more property taxes than the Constitution permits or prevent a municipality from receiving property taxes to which it is constitutionally entitled.

[29] Biltmore Wineman LLC owns the properties at issue along with Toll and is also a party to this dispute. For ease of reading, however, we will refer exclusively to Toll and Northville as the parties in this opinion.

16

installed public-service improvements[30] to a "parent" parcel that was to be divided into residential "child" parcels. The value of the public-service improvements, which were legally defined as "additions" pursuant to MCL 211.34d(1)(b)(*viii*), was included in the taxable value for the parent parcel for tax year 2000, thereby substantially increasing the taxable value of Toll's property.[31] Toll did not timely challenge the increase in taxable value for tax year 2000, and the parent parcel was divided into child parcels by tax year 2001.[32] For 2001, the assessor proportionately split the addition to the taxable values among the resulting child parcels, so that each child parcel carried its portion of the addition of the value of the public-service improvements to the taxable value that had previously been assessed to the parent parcel.[33]

Toll timely appealed the taxable values of the child parcels for tax year 2001 in the Tax Tribunal.[34] Also, Toll filed a declaratory action in the circuit court to have MCL 211.34d(1)(b)(*viii*), the basis for including public-service improvements as "additions,"

---

[30] The public-service improvements included infrastructure such as a primary access road, streetlights, sewer service, water service, electrical service, natural gas service, telephone service, and sidewalks.

[31] The inclusion of the public-service improvements as additions increased the taxable value of the property from $4,701,861 to $23,395,587 for tax year 2000.

[32] This division of property did not trigger uncapping under MCL 211.27a(3) because Toll remained the owner of the divided parcels.

[33] The value of the additions is approximately 79.903 percent of the assessed taxable value for each parcel.

[34] Toll eventually amended its petition to include tax years after 2001. Thus, the tax years before us for *Toll Northville* are 2001 and later.

17

declared unconstitutional.[35]   The Tax Tribunal held Toll's tribunal case in abeyance pending the outcome of the circuit court action.  Toll was successful in its circuit court action, culminating in an opinion from this Court that unanimously declared MCL 211.34d(1)(b)(*viii*) unconstitutional.[36]

Following this Court's decision, the Tax Tribunal proceedings were reopened. The tribunal concluded that it lacked jurisdiction to amend the taxable value of the parent parcel for tax year 2000 because that value was not timely appealed.  However, the tribunal prospectively amended the taxable value of the properties at issue to conform to this Court's decision.   Thus, the tribunal removed the value of the public-service improvement additions from the parcels' taxable values for tax year 2001 and subsequent years.

---

[35] Generally speaking, quasi-judicial agencies such as the Tax Tribunal do not have the authority to hold a statute unconstitutional.  See *Wikman v City of Novi*, 413 Mich 617, 646-647; 322 NW2d 103 (1982); *Dation v Ford Motor Co*, 314 Mich 152; 22 NW2d 252 (1946).

[36] In *Toll Northville*, 480 Mich at 13-14, we stated:

> The issue is the constitutionality of MCL 211.34d(1)(b)(*viii*), which, as written, defines "public services" as "additions" and, therefore, would allow for the taxation of the value added from the installation of public-service improvements, which are "water service, sewer service, a primary access road, natural gas service, electrical service, telephone service, sidewalks, or street lighting."  We agree with the analysis and the decision of the Court of Appeals [*Toll Northville, Ltd v Northville Twp*, 272 Mich App 352; 726 NW2d 57 (2006)], which declared MCL 211.34d(1)(b)(*viii*) unconstitutional.  The Court of Appeals correctly concluded that the mere installation of public-service improvements on public property or on utility easements does not constitute a taxable "addition"—as that term was understood when the public adopted Proposal A—in this instance, involving infrastructure improvements made to land destined to become a residential subdivision.

18

Northville appealed the tribunal's decision in the Court of Appeals.[37] In a published opinion, the Court of Appeals reversed the tribunal's decision[38] and held that the Tax Tribunal did not have jurisdiction to review a previous year's taxable value for purposes of determining a timely appealed current year's taxable value.[39] Accordingly, the Court of Appeals ordered the Tax Tribunal to reinstate and affirm the taxable values assessed by Northville, including the unconstitutional additions for public-service improvements.[40]

Toll sought leave to appeal in this Court. We granted leave to appeal, limiting the issue to "whether the Court of Appeals correctly held that the Michigan Tax Tribunal had no jurisdiction to reduce an unconstitutional increase in the taxable value of property if the improperly increased taxable value was not challenged in the year of the increase." *Toll Northville Ltd Partnership v Northville Twp*, 490 Mich 877 (2011).

---

[37] As noted, the Court of Appeals consolidated Northville's appeal with two other cases involving the same issue regarding the removal of unconstitutional public-service improvements from taxable values.

[38] *MJC/Lotus Group*, 293 Mich App 1.

[39] Because the Court of Appeals held that the Tax Tribunal did not have jurisdiction to review the accuracy of a property's taxable value for a year that was not timely appealed, the Court of Appeals did not address Northville's alternative argument that the adjusted valuation set by the Tax Tribunal did not comport with a stipulation by the parties regarding the valuation. On remand, we direct the Court of Appeals to address this issue.

[40] *MJC/Lotus Group*, 293 Mich App at 16. Because the Court of Appeals held that the tribunal lacked jurisdiction, it did not reach Northville's remaining arguments on appeal concerning the valuation methods used by the Tax Tribunal to adjust the taxable values of Toll's parcels. *Id*. at 14-15. On remand, we direct the Court of Appeals to address these issues as well.

19

B. ANALYSIS

As noted in the discussion of *Mich Props*, the GPTA provides a March board of review with the authority to bring previous erroneous taxable values into compliance with the GPTA for purposes of determining the taxable value in a subsequent year. As in *Mich Props*, the initial taxable value in this case was erroneous as a matter of law,[41] and it was not challenged in the year that it was placed on the tax rolls; rather, it was challenged in a subsequent year. However, unlike the proceedings in *Mich Props*, the proceedings in this matter involved the Tax Tribunal instead of the March board of review. Therefore, we must determine whether the Tax Tribunal possesses the same powers of correction as a March board of review. We hold that under the plain language of the Tax Tribunal Act,[42] it does.

The Michigan Tax Tribunal was created by the Tax Tribunal Act.[43] The Tax Tribunal is charged with original jurisdiction over tax proceedings, including appeals of cases arising from March boards of review. In *Wikman v City of Novi*, 413 Mich 617, 629; 322 NW2d 103 (1982), we described the tribunal as follows:

---

[41] In *Toll Northville*, the taxable value for Toll's parcel included an addition for public-service improvements that was declared unconstitutional by this very Court. An unconstitutional addition is no addition at all. See *Toll Northville*, 480 Mich at 14. Because the 2000 taxable value included this unconstitutional addition, the taxable value was not in accordance with MCL 211.27a(2) for that tax year. Moreover, the resulting tax year 2000 taxable values were also unlawfully valued above the constitutional cap set by article 9, § 3.

[42] MCL 205.701 *et seq*.

[43] MCL 205.721. For a discussion of the history and purpose of the Tax Tribunal Act, see *Wikman*, 413 Mich at 626-629.

The Tax Tribunal is a "quasi-judicial agency" designed to provide a forum in which taxpayers may obtain relief from adverse agency decisions. The primary functions of the Tax Tribunal are to find facts and review the decisions of agencies within its jurisdiction. The Tax Tribunal specializes in reviewing these determinations. To assure that it possesses the necessary expertise to resolve these cases efficiently, the Tax Tribunal Act requires that certain members of the tribunal have special qualifications.

The Tax Tribunal Act sets forth the powers and jurisdiction of the tribunal. MCL 205.731 provides[44] in pertinent part:

The tribunal has exclusive and original jurisdiction over all of the following:

(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to the assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state.

(b) A proceeding for a refund or redetermination of a tax levied under the property tax laws of this state.

Thus, according to the plain language of MCL 205.731, the Tax Tribunal has exclusive and original jurisdiction to review decisions of "an agency relating to . . . valuation . . . under the property tax laws of this state." This language pertains to local taxing authorities such as a township's March board of review.[45] Moreover, pursuant to MCL 205.735(2) and MCL 205.735a(2), the proceedings before the tribunal are "original and independent and [are] considered *de novo*." (Emphasis added.)

---

[44] Although a previous version of MCL 205.731 was in effect during the tax years at issue in this case, the differences do not affect our analysis. See 2008 PA 125; 1973 PA 186.

[45] See MCL 205.703(a) (defining "agency" for purposes of the Tax Tribunal Act); see also MCL 211.29 and 211.30.

MCL 205.732 sets forth the tribunal's powers in reviewing a taxing authority's decision once the tribunal's jurisdiction is properly invoked under MCL 205.735 or MCL 205.735a(6). It provides[46] in pertinent part:

> *The tribunal's powers include*, but are not limited to, all of the following:
>
> (a) *Affirming, reversing, modifying, or remanding a final decision, finding, ruling, determination, or order of an agency.*
>
> (b) Ordering the payment or refund of taxes in a matter over which it may acquire jurisdiction.
>
> (c) Granting other relief or issuing writs, orders, or directives that it deems necessary or appropriate in the process of disposition of a matter over which it may acquire jurisdiction.
>
> (d) Promulgating rules for the implementation of this act, including rules for practice and procedure before the tribunal . . . under the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328. [Emphasis added.]

Additionally, MCL 205.737(1) provides that "[t]he tribunal shall determine a property's taxable value pursuant to [MCL 211.27a]."[47]

It is apparent from these provisions that the Tax Tribunal has original jurisdiction over appeals regarding the valuation of property by an assessor or a March board of review and that the tribunal reviews those appeals de novo. As part of the tribunal's powers, the tribunal can affirm, reverse, or modify the decision of a March board of

---

[46] Again, the amendments of MCL 205.732 do not affect its application to the case at issue. See 2008 PA 125; 1973 PA 186.

[47] Further, Mich Admin Code, R 205.1283(1) indicates that once the Tax Tribunal's jurisdiction is properly invoked, the scope of its inquiry in determining the validity of an assessment for the appealed tax year is broad and limited only by relevancy.

review, and in doing so, the tribunal is authorized to determine the property's taxable value in accordance with MCL 211.27a.

The Legislature has granted the tribunal the authority to enforce a March board of review's error corrections under MCL 211.29 and MCL 211.30. Thus, the Tax Tribunal has the authority to carry out a March board of review's duty to correct a previous erroneous taxable value in order to adjust the current taxable value, thereby bringing the taxable value back into compliance with the GPTA and Proposal A.[48] Accordingly, the Tax Tribunal Act grants the Tax Tribunal the authority to provide the relief that Toll argues for in this case.[49]

---

[48] As discussed in note 27 of this opinion, the Court of Appeals in this case relied on *Auditor General*, 351 Mich 162, for the proposition that a previous failure to correct an erroneous value by a board of review precludes attack on that value in a subsequent year. Again, we note that *Auditor General* is limited to situations predating Proposal A and thus it is not applicable to this case.

[49] Northville argues that the Tax Tribunal did not have jurisdiction to change the 2001 taxable values because the 2000 taxable value of the parent parcel was not timely appealed in accordance with the time limitations contained in MCL 205.735. Despite the fact that Toll did not timely appeal the 2000 taxable value in the Tax Tribunal, Toll did timely appeal the 2001 values of the child parcels. Thus, Toll properly invoked the tribunal's jurisdiction with respect to the 2001 values, and, notably, Toll does not seek a refund or a reduction of taxes for tax year 2000. Although the Tax Tribunal cannot adjust the tax year 2000 taxable value because of Toll's failure to timely appeal that value, the tribunal can consider data from that year when adjusting the timely challenged 2001 taxable values. Because the 2001 taxable values are predicated on the 2000 taxable value, the information from 2000 is therefore relevant for determining the correct values for 2001. In holding that the tribunal did not have jurisdiction to review taxable values of a year not timely appealed, the Court of Appeals erred by confusing the difference between the Tax Tribunal's inability to change and grant relief regarding the tax year 2000 taxable value and its ability to consider evidence of how the tax year 2000 assessment was determined in reviewing taxable values for a year that was timely appealed.

23

Thus, in *Toll Northville*, we agree with the Tax Tribunal that it has the ability to prospectively adjust the timely challenged taxable values of Toll's parcels for tax year 2001 and subsequent years because the tax year 2000 taxable value of the parent parcel was erroneous as a result of the inclusion of unconstitutional additions.[50] Accordingly, we reverse the Court of Appeals' judgment pertaining to Toll in *MJC/Lotus Group v Brownstown Twp*, 293 Mich App 1; 809 NW2d 605 (2011). However, because the Court of Appeals did not reach Northville's remaining issues on appeal regarding the valuation of the subject properties, we remand this case to the Court of Appeals for consideration of those issues.

## III. CONCLUSION

In *Michigan Properties*, we hold that the failure to adjust the taxable values in the year immediately following the transfer produced erroneous taxable values because the taxable values were not in compliance with the GPTA. Further, the GPTA does not preclude a March board of review from correcting an erroneous taxable value that resulted from the failure of an assessor to adjust a property's taxable value in the year immediately following its transfer. Accordingly, we also hold that a March board of review may adjust the erroneous taxable value in a subsequent year in order to bring the current taxable value into compliance with the GPTA. The Court of Appeals held that the error in this case could not be remedied and, therefore, we reverse the judgment of the

---

[50] In carrying out this adjustment, the Tax Tribunal is required to ensure that the taxable values comply with the Michigan Constitution and apply the parameters set forth in MCL 211.27a.

Court of Appeals and reinstate the Tax Tribunal's decision affirming the March board of review's correction of the tax rolls to reflect the properly adjusted taxable values.

In *Toll Northville*, we hold that the Tax Tribunal does have the authority to reduce an unconstitutional previous increase in taxable value for purposes of adjusting a taxable value that was timely challenged in a subsequent year. The Tax Tribunal Act sets forth the Tax Tribunal's jurisdiction. Once its jurisdiction is properly invoked, the Tax Tribunal possesses the same powers and duties assigned to a March board of review under the GPTA, including the duty to adjust erroneous taxable values to bring the current tax rolls into compliance with the GPTA. Accordingly, we reverse the judgment of the Court of Appeals pertaining to Toll Northville Limited Partnership, and we remand the case to the Court of Appeals to consider Northville Township's remaining issues on appeal regarding the Tax Tribunal's valuation of the subject properties.

> Diane M. Hathaway
> Robert P. Young, Jr.
> Michael F. Cavanagh
> Marilyn Kelly
> Stephen J. Markman
> Mary Beth Kelly
> Brian K. Zahra