# STATE OF MICHIGAN

# COURT OF APPEALS

CAMBRIDGE DEVELOPMENT GROUP,

        Petitioner-Appellee,

v

CITY OF ANN ARBOR,

        Respondent-Appellant.

UNPUBLISHED
August 13, 2015

No. 321897
Tax Tribunal
LC No. 00-460345

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

In this dispute over the proper valuation of real property, respondent, City of Ann Arbor, appeals by right the Tax Tribunal's final opinion and judgment. On appeal, the City argues that the Tax Tribunal erred in several respects when it corrected the valuation of four properties on grounds not raised by petitioner, Cambridge Development Group. We conclude that the Tax Tribunal erred when it concluded that it had jurisdiction to consider the petition for tax years prior to 2013, erred when it concluded that it had jurisdiction to consider the petition as it applied to a parcel that Cambridge Development did not own at any point in the 2013 tax year, and erred when it raised an issue on its own initiative without giving the City an adequate opportunity to argue and present evidence on the issue. Accordingly, we vacate the Tax Tribunal's opinion and judgment as to four properties and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS

Cambridge Development owned three contiguous lots in Ann Arbor, Michigan, and constructed duplexes on each lot, which it split into two-unit condominiums on each lot; it built the "Baldwin House" condominiums in 2007, the "Michigan House" condominiums in 2008, and the "Maize and Blue House" condominiums in 2009. The City assigned new parcel numbers to the condominiums and taxed them as individual properties. The City assigned parcel numbers 09-09-33-104-040 and 09-09-33-104-041 to the Baldwin House condominiums, parcel numbers 09-09-33-104-042 and 09-09-33-104-043 to the Michigan House condominiums, and parcel

numbers 09-09-33-104-044 and 09-09-33-104-045 to the Maize and Blue House condominiums.[1] Cambridge Development protested the assessor's valuation of each condominium and the valuation of a vacant lot (parcel 09-09-33-104-035), which it also owned, to the board of review in March 2013.

After it was unable to obtain the relief it requested, Cambridge Development petitioned the Tax Tribunal in July 2013. It argued that the assessor erred when it assessed the condominiums by assigning each a percentage of the original lot size that was greater than 50 percent. It maintained that the errors resulted in an incorrect valuation for the lots from the date that the condominiums were assigned tax identification numbers. It asked the Tax Tribunal to correct the lot sizes and the corresponding valuations for the condominiums from the date of the first erroneous assessment, which for some parcels would be as far back as 2008. Cambridge Development also argued that the assessor over-valued the condominiums and vacant lot when compared to the values for similar properties in the area.

In response to Cambridge Development's petition, the City explained that it did not assign more than 50% of the lot to each condominium: "As a result of not having exact dimensions for each unit, the assessor valued the lot as a whole, and discounted the value by 50% . . . ." Because the lots were zoned R2A, which is for multifamily lots, the City applied a multiplier of 1.5 (150%) to the lots' values to reflect the "potential of higher density, or the highest and best use." When the multiplier is halved, the adjustment factor for each parcel amounts to 75% of the lot's base value. The City noted that the 75% adjustment "appears on all the land valuations" for the condominiums at issue.

In September 2013, the Tax Tribunal entered an order dismissing Cambridge Development's petition to the extent that it involved a request to correct the values for prior tax years. The Tax Tribunal stated that it did not have jurisdiction to correct those assessments under MCL 205.735a.

The Tax Tribunal held an evidentiary hearing in December 2013, and the referee issued his proposed opinion and judgment in January 2014. The referee determined that the petition should be dismissed as to parcels 43 and 44 because Cambridge Development sold those properties prior to the tax year at issue. The referee determined that the City's "cost approach" and evidence was "reliable and supports the true cash value" for the properties. The referee also determined that Cambridge Development failed to establish that the City's assessor intentionally erred when it determined the applicable lot size or that the City's assessments were fraudulent.

After the Tax Tribunal requested more information, the City submitted the requested information and again explained that it did not double tax the condominiums:

> The City assesses R2A properties at a 1.50 multiplier because of the potential of
> higher density buildings. . . . The land is assessed as one whole lot then separated

---

[1] For ease of reference, we shall refer to the properties by the last two digits of their parcel number. Thus, we shall refer to parcel number 09-09-33-104-041 as parcel 41.

per the master deed ownership percentage between the Condominium units, in this case 50% of the lot value. Each unit shows a percentage Adj of 75% or 1.50 x .50% [sic] in the land calculations. The units are not being assessed for all of the land value, or assessed twice as the petitioner claims. . . . The land is assessed similar to all condominiums in the City.

In May 2014, the Tax Tribunal issued its final opinion and judgment. It found that, although there was sufficient information to determine the dimensions of each condominium, "the land was split fairly equally between the two parcels following each of the splits." For that reason, the City's "50 percent reduction in the adjustment factor would appropriately reduce the land value to reflect the lot even though the frontage and/or depth listed on the property record card was not reduced to reflect the actual dimensions of each parcel." The Tax Tribunal, nevertheless, found that the assessor erred when applying the 50 percent reduction. It explained that the evidence showed that the assessor halved the 1.5 multiplier to reach the 75% adjustment even though the "record cards" for the properties showed that they had previously been assessed using a different base multiplier. Specifically, the Tax Tribunal noted, the parent parcel for parcels 40 and 41 had previously been assessed using a 1.0 multiplier and the parent parcel for parcels 42 and 43 and been assessed using a 1.3 multiplier. The Tax Tribunal found that the assessor had intended to halve the 1.0 and 1.3 multipliers respectively, rather than halve a 1.5 multiplier. The Tax Tribunal determined that these errors were "mathematical computational errors which qualify as clerical errors under MCL 211.53a" and that under that statute it had the authority to correct them for the previous three tax years. It also determined that the assessor properly halved the 1.3 multiplier for parcels 44 and 45.

The Tax Tribunal for the most part accepted the City's evidence concerning the value of the lots at issue, but modified those values using the corrected adjustment modifier. It also made some minor adjustments to the values for the properties not subject to the clerical errors. Finally, the Tax Tribunal adopted the earlier proposed opinion and judgment to the extent that it did not conflict with the final opinion and judgment and it vacated the earlier order of partial dismissal.

The City now appeals in this Court.

## II. JURISDICTION, DUE PROCESS, AND CLERICAL ERRORS

### A. STANDARDS OF REVIEW

On appeal, the City argues that the Tax Tribunal erred when it elected to correct the adjustment factor applied to parcels 40, 41, 42, and 43, for previous years. It maintains that the Tax Tribunal only had jurisdiction to consider whether those four parcels were properly assessed for the previous tax year. It similarly contends that the Tax Tribunal deprived it of due process when it elected to correct what it characterized as clerical errors under MCL 211.53a without giving it notice and an opportunity to be heard on that issue. Finally, it maintains that there was no record evidence to support the Tax Tribunal's finding that the assessor intended to halve some multiplier other than 1.5 for the properties at issue.

-3-

Absent fraud, this Court's review is limited to determining whether the Tax Tribunal erred in applying the law or adopted a wrong legal principle. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). The Tax Tribunal's factual findings are final if supported by competent, material, and substantial evidence on the whole record. *Michigan Properties, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). This Court reviews de novo whether the Tax Tribunal properly interpreted and applied the law to the facts. *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 507; 853 NW2d 481 (2014). Finally, this Court reviews de novo whether the Tax Tribunal's procedures sufficiently protected the City's right to due process. *Elba Twp v Gratiot County Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

## B. ANALYSIS

The City maintains that the Tax Tribunal lacked jurisdiction to consider Cambridge Development's petition as to parcels 40, 41, 42, and 43, because Cambridge Development did not own the properties by the time it filed its petition and did not have standing to petition the Tax Tribunal for relief. The Tax Tribunal has exclusive and original jurisdiction over a "proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state." MCL 205.731(a).

Cambridge Development petitioned the Tax Tribunal to review the City's final decision concerning several properties. It alleged that it developed the properties and that the appeal was "for correction of the lot size from the date of tax ID assignment on each property and a correction for the tax assessment for subsequent years to Cambridge Development Group and its principles . . . in whose individual names the titles to several of the properties were quitclaimed . . . ." It petitioned on its own behalf and on behalf of its principles and it requested relief for years that it or its principles were parties in interest and paid taxes.

It is evident from Cambridge Development's petition that it was contesting the City's assessment of the properties at issue for the 2013 tax year in addition to earlier tax years. In order to properly invoke the Tax Tribunal's jurisdiction in an assessment dispute, Cambridge Development had to be a party in interest and file its petition on or before July 31 of the tax year involved. MCL 205.735a(6). The failure to properly invoke the Tax Tribunal's jurisdiction in an assessment dispute precludes the Tax Tribunal from asserting its jurisdiction to hear the petition other than to dismiss it. See *Leahy v Orion Twp*, 269 Mich App 527, 532; 711 NW2d 438 (2006).

There is record evidence that Cambridge Development or one of its principles had an interest in parcels 40, 41, and 42 during the 2013 tax year. As such, Cambridge Development properly invoked the Tax Tribunal's jurisdiction to consider the assessment dispute for that tax year as to those properties. MCL 205.731(a); MCL 205.735a(6). Once the Tax Tribunal properly had jurisdiction to consider the petition, it also had the authority to grant other relief concerning the parcels at issue, which included the authority to correct a clerical error and order the refund of excess taxes paid as a result under MCL 211.53a. See MCL 205.732(c) (authorizing the Tax Tribunal to grant "other relief . . . it deems necessary or appropriate in the disposition of a matter over which it may acquire jurisdiction"); *Mich Properties*, 491 Mich at

543-545 (holding that the Tax Tribunal has the authority to correct a previous erroneous taxable value in order to bring the taxable value back into compliance with the law). However, the Tax Tribunal only had jurisdiction to consider clerical errors affecting the tax for the 2013 tax year. See *Leahy*, 269 Mich App at 532 (rejecting the contention that MCL 211.53a allowed the petitioner to circumvent the jurisdictional limitations provided under MCL 205.735 for disputes concerning assessments); see also *Mich Properties*, 491 Mich at 544 n 49 (agreeing that the taxpayer did not timely appeal the previous tax year, but explaining that the taxpayer was not seeking a refund or reduction in taxes for the prior year; the taxpayer was merely asking the Tax Tribunal to consider the data from the prior years in determining whether the assessment was proper for the current year). As for parcel 43, the record shows that neither Cambridge Development nor any of its principles held an ownership interest in the 2013 tax year. Cambridge Development, therefore, did not properly invoke the Tax Tribunal's jurisdiction to consider the assessment dispute with regard to that parcel, MCL 205.735a(6), and the Tax Tribunal lacked jurisdiction to provide any relief concerning the assessment, *Leahy*, 269 Mich App 532. Consequently, the Tax Tribunal erred when it determined that it had jurisdiction to consider whether Cambridge Development was entitled to relief under MCL 211.53a for any year prior to the 2013 tax year and erred when it asserted jurisdiction to consider Cambridge Development's petition as to parcel 43.

The City also argues that the Tax Tribunal erred when it found that the City's assessor intended to halve the adjustment factor shown on the property cards for the parent parcels rather than the 150% modifier the assessor actually applied. This Court has held that a clerical error under the analogous provision in MCL 211.53b refers to "errors of a typographical, transpositional, or mathematical nature"—that is, "recording a number incorrectly on the assessment rolls or performing a mathematical error in arriving at the final assessment figure." *Int'l Place Apartments-IV v Ypsilanti Twp*, 216 Mich App 104, 109; 548 NW2d 668 (1996). The fact that an assessor erred in determining what number to use does not establish that the assessor made a clerical error: "[T]he figure recorded on the assessment rolls was accurate in the sense that it was the number intended by the assessor, albeit that the assessor may well have erred in the determination of what that number should be by failing to consider all relevant facts." *Id.*

In this case, the City twice informed the Tax Tribunal that it adjusts the value of property zoned R2A at 150% of its value to reflect the potential for higher density housing and that it halved that factor when applied to the condominiums at issue to reflect the fact that each lot had two condominiums. The Tax Tribunal accepted that this was a fair way to individually assess the parcels, but found that the assessor halved the wrong adjustment factor. It reached that conclusion from the evidence that the record cards for the parent parcels reflected that the City used a different adjustment factor in the past. The record cards also show that the City did use the original adjustment factor from the parent parcel when assessing parcels 44 and 45; and it did so despite its representation that it uses a 1.5 adjustment factor for properties zoned R2A. The fact that the City used a different adjustment factor in the past does not by itself support an inference that the assessor intended to use that factor, but when considered in light of the evidence that the City used the original factor for parcels 44 and 45, the totality of the evidence supports an inference that the City's assessor might have intended to use the adjustment factor from the parent parcels, but mistakenly inserted the 1.5 factor into the calculation. Nevertheless, although there was some support for the Tax Tribunal's finding, on this record we decline to

consider whether the evidence amounted to competent, material, and substantial evidence on the whole record. *Michigan Properties, LLC*, 491 Mich at 527.

Cambridge Development challenged whether the City could properly use an adjustment factor greater than 50% for the parcels, but did not allege or argue that the City's use of a 75% adjustment factor was the result of a clerical error. It also did not check the box on its petition indicating that it was "Appealing a purported Clerical Error or Mutual Mistake of Fact." The first mention of a possible clerical error was in the Tax Tribunal's final opinion and judgment. By raising this issue on its own initiative and without notice to the parties, the Tax Tribunal deprived the City of the opportunity to explain why it did not halve the original adjustment factor when it determined the appropriate factor for parcels 40, 41, and 42. We agree with the City's contention that the better practice would have been for the Tax Tribunal to advise the parties of the potential issue and give them an opportunity to present evidence and arguments before rendering its decision. See *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014) (stating that, at a minimum, due process requires that the parties be given notice and a meaningful opportunity to be heard). Had the Tax Tribunal given the City the opportunity to fully address this issue, the City might have been able to demonstrate that the adjustment factor actually used was the correct factor. For this reason, we conclude that this matter should be remanded to the Tax Tribunal for reconsideration of the petition as it applies to parcels 40, 41, and 42.

## III. CONCLUSION AND RELIEF

The Tax Tribunal erred when it asserted jurisdiction to consider Cambridge Development's petition as to parcel 43. Because Cambridge Development did not properly invoke the Tax Tribunal's jurisdiction to consider the assessment dispute with regard to that parcel, the Tax Tribunal should have dismissed the petition as to it. See MCL 205.735a(6). Similarly, the Tax Tribunal lacked jurisdiction to consider whether Cambridge Development was entitled to relief under MCL 211.53a for any year prior to the 2013 tax year because Cambridge Development did not timely challenge the previous assessments. *Id.* Finally, although there was evidence that might support an inference that the City's assessor used the wrong base adjustment factor when calculating the adjustment factor applicable to parcels 40, 41, and 42, and that the use was inadvertent, because the Tax Tribunal did not give the City an adequate opportunity to argue and present evidence on this issue, we decline to affirm on this record.

Accordingly, we vacate the Tax Tribunal's final opinion and judgment with regard to parcels 40, 41, 42, and 43, and remand this matter to the Tax Tribunal for further proceedings. On remand, the Tax Tribunal shall amend its final opinion and judgment to dismiss for lack of jurisdiction Cambridge Development's petition as to parcel 43, and as to parcels 40, 41, and 42 for all tax years prior to the 2013 tax year. The Tax Tribunal shall also give the parties an opportunity to argue and present additional evidence concerning whether the City's use of a base 150% adjustment factor for parcels 40, 41, and 42, was accurate or the result of a clerical error. The Tax Tribunal may hold an additional evidentiary hearing on the issue if it so chooses. After giving the parties the opportunity to be heard on this issue, the Tax Tribunal shall reconsider Cambridge Development's petition as to parcels 40, 41, and 42 for the 2013 tax year in full and shall amend its final judgment and opinion to include its new findings and conclusions of law.

Because we are remanding this case to the Tax Tribunal, we decline to consider the City's claim that the Tax Tribunal erred by failing to recognize that parcels 41 and 42 were uncapped as a result of transfers in ownership. On remand, the Tax Tribunal shall consider this issue and amend its opinion and judgment accordingly. In all other respects, we affirm the Tax Tribunal's final opinion and judgment.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro