CANADA CREEK RANCH ASSOCIATION, INC v MONTMORENCY
TOWNSHIP

Docket No. 150099. Submitted April 13, 1994, at Grand Rapids.
Decided August 16, 1994, at 9:15 A.M. Leave to appeal sought.

Canada Creek Ranch Association, Inc., filed in the Tax Tribunal a
petition challenging a multimillion dollar assessment imposed
for tax purposes by Montmorency Township on an undeveloped
tract of approximately 11,700 acres used by members of the
association for hunting, fishing, and other recreational pursuits.
Hillman Community Schools intervened as a respondent. Mem-
bership in the association required the purchase of one or more
of three thousand lots or cabin sites on approximately eight
hundred acres adjoining the tract. The association came into
possession of the tract through conveyances of portions of the
tract by Monteith Land Company, Black River Ranch, and the
Vernor estate. The Tax Tribunal determined that the disputed
tract had a nominal value of less than $100 because restrictions
on its sale and use, as imposed in the deeds through which the
tract was conveyed to the association, rendered the tract un-
marketable. Montmorency Township and Hillman Community
Schools appealed.

The Court of Appeals *held:*

1. The Tax Tribunal erred in determining that the portions
conveyed by Black River Ranch and the Vernor estate were
unmarketable by virtue of the improbability of 12.51 percent of
the association members approving a sale of the tract, as
required by the articles and bylaws of the association for the
sale of the tract. A landowner may not rely on self-imposed
restrictions on the sale of the property as a means of avoiding
taxes on the property. Restrictions on the use of the Black
River Ranch portions, as imposed in the deeds through which
those portions were conveyed to the association, do not neces-
sarily render the tract unmarketable or its value nominal. On
remand, the Tax Tribunal is to redetermine the value of the
property acquired from Black River Ranch and the Vernor
estate.

2. Competent, material, and substantial evidence supports
the Tax Tribunal's determination that the portions acquired
from Monteith Land Company were subject to restrictions

imbedded in the chain of title that rendered those portions unmarketable and valuable only to the members of the association.

3. Contrary to the respondents' assertion, the Tax Tribunal did not make a determination that the assessed values of the lots adjoining the tract reflect the value of the tract.

Affirmed in part, reversed in part, and remanded.

*Clark, Klein & Beaumont* (by *Thomas S. Nowinski* and *Robert J. McClory*), for Canada Creek Ranch Association, Inc.

*Thrun, Maatsch & Nordberg, P.C.* (by *Michael A. Eschelbach*), for Montmorency Township and Hillman Community Schools.

Before: MICHAEL J. KELLY, P.J., and HOOD and S. B. MILLER,* JJ.

PER CURIAM. Respondents appeal as of right a Tax Tribunal ruling that petitioner's common amenity property had only nominal value for the tax years 1986 through 1990. We affirm in part, reverse in part, and remand.

I

Petitioner Canada Creek Ranch Association, Inc., is a recreational club in which individuals hold certificates of membership in the association and are required to purchase platted lots on the corporate premises of Canada Creek in Montmorency Township, Montmorency County. Members are permitted to use approximately 11,700 acres (hereinafter "common amenity property") of largely undeveloped property contiguous to approximately eight hundred acres of three thousand subdivided, individually owned lots. There is no

* Circuit judge, sitting on the Court of Appeals by assignment.

market for petitioner's stock apart from lot ownership. The stock may only be acquired in conjunction with the transfer of a lot.

Petitioner acquired the common amenity property from three separate sources. The largest portion was obtained from the Monteith Land Company. In 1934, Monteith began to develop the ranch property. Monteith divided approximately eight hundred acres into three thousand platted lots to put up for sale. That same year, petitioner was incorporated. Monteith agreed to convey the remainder of its property to petitioner without monetary consideration in two transactions. The first conveyance was to occur when one-half of the platted lots were sold, and the second when the rest of the lots were sold. Only the property conveyed in these two transactions—not the individual platted lots—is at issue here.

The agreement between Monteith and petitioner provided that the common amenity property "shall be held exclusively and continuously for the use, benefit and pleasure of the members of the Canada Creek Ranch Association," and that "all members of the Association duly enrolled and in good standing . . . shall be permitted to use, occupy and enjoy for hunting, fishing and other recreational purposes, any and all parts of said land and premises except the 'cabin sites' [lots] as aforesaid."

Pursuant to the agreement, the southern half of the common amenity property was conveyed to petitioner in 1942, when one-half of the platted lots had been sold.

In 1943, five lot owners brought suit in the Montmorency Circuit Court against petitioner, Monteith, and certain individuals associated with the development of Canada Creek. In a decree dated May 5, 1944, the court determined the rights of the parties, including the rights of petitioner's

members "as a class." The decree governed both the conveyed and unconveyed portions of the property. It incorporated the 1934 agreement between Monteith and petitioner and declared their rights and obligations as those "necessarily incident to the mutual interest of each corporation in the success of the club project . . . as more particularly set forth in the certain contract of September 5, 1934 . . . ." In 1953, the decree was recorded with the register of deeds in Montmorency County.

In 1954, petitioner purchased the remaining unsold lots from Monteith and, pursuant to the agreement, Monteith conveyed the other half of the property at issue.

In 1955, the Montmorency Circuit Court issued another decree in a suit brought by petitioner against individuals claiming mineral rights in the Monteith property. The decree declared petitioner the "absolute owner in fee" of the property except for certain mineral rights.

The second source of the common amenity property is Black River Ranch. That portion of the property comprises approximately five hundred acres along the western boundary of the common amenity property. Black River Ranch conveyed this property in three separate deeds dated 1951, 1953, and 1963. The deed for the first conveyance restricts the use of the property as follows:

> Said conveyed lands shall never[,] either in whole or in part, be used, occupied or enjoyed in any manner or for any purpose whatever except as wild lands, and shall not be partitioned[,] divided, or in any manner apportioned into any parcel or parcels, subdivisions or lots, nor shall any buildings or structures of any character be erected, constructed, or moved or placed anywhere thereon, unless with the express written consent of Black [River Ranch].

The deed also contains a reversion clause, providing for reversion of the property to Black River Ranch in the event that the deed restriction is violated. The deed for the 1953 conveyance from Black River incorporates the same restrictions. Apparently, the 1961 deed also contains these restrictions.

The final portion of the common amenity property was acquired from the Vernor estate in 1970. In a single, related transaction, petitioner subdivided a portion of the Vernor property upon which a cabin was located and sold that lot to heirs of the Vernor estate. The remaining property comprised approximately forty acres. Although the deed to the cabin lot requires any purchaser of the lot to be a member of petitioner, the remainder of the Vernor estate property is not subject to any restrictions.

Petitioner's articles of incorporation provide additional restrictions on the sale of the common amenity property. Article III, § 9, of petitioner's bylaws provides:

> The Board of Directors shall control the policy, funds, and property of the Association, authorizing all contracts, sales and purchases and declaring and paying dividends. The Board of Directors, except as otherwise provided herein, shall not have authority to convey, sell, lease or mortgage, any of the land owned by the Association unless authorized to do so by the holders of a majority of the shares of the Association voting in person or by proxy at an Annual or Special Meeting.

Under Article VIII, twenty-five percent of petitioner's shares would be needed to vote on the sale of common amenity property, and a majority of those, or 12.51 percent of all shares, could authorize a sale.

In 1986, respondent Montmorency Township assessed the value of the common amenity property at $2,247,754. Petitioner challenged the assessment before the Michigan Tax Tribunal, claiming the property had no value because the land was subject to severe sale and use restrictions. Respondent Hillman Community Schools intervened because it had a financial interest in assessments made on the property. The tribunal ruled that the common amenity property had only nominal value represented by a sum not to exceed $100.

II

Respondents believe that the Tax Tribunal erred in ruling that the common amenity property had only nominal value. Where, as here, fraud is not alleged, this Court must determine whether the tribunal committed an error of law or adopted a wrong principle. *Jones & Laughlin Steel Corp v City of Warren,* 193 Mich App 348, 352; 483 NW2d 416 (1992). The tribunal's findings of fact must be supported by competent, material, and substantial evidence on the whole record. *Id.* Substantial evidence must be more than a scintilla of evidence, but it may also be less than a preponderance of the evidence. *Id.* at 352-353.

With respect to the property acquired from the Vernor estate and Black River Ranch, we agree with respondents that the tribunal erred. It found that the practical restrictions placed on the sale of the Vernor property by petitioner's articles and bylaws made the sale of the property highly improbable. The tribunal considered these same restrictions when it determined that the Black River Ranch property was unmarketable. Although petitioner showed it is highly improbable that even 12.51 percent of its members would approve a sale

of common amenity property, such self-imposed restrictions on marketability are not proper considerations in assessing property value. In *NeBo-Shone Ass'n, Inc v State Tax Comm,* 58 Mich App 324, 334-335; 227 NW2d 358 (1975), this Court held that restrictions on the sale of corporate property arising out of a corporation's bylaws may not be considered in assessing the tax value of the corporate property. Neither a private individual nor a corporation may rely on self-imposed restrictions on the sale of property as a means of avoiding taxes. *Id.*

The tribunal also took into consideration the use restrictions contained in the deeds for the Black River Ranch property. These restrictions prohibit development, subdivision, or any use of the property other than as wild lands. Although the restrictions undoubtedly have an effect on the value of the property for assessment purposes, they do not necessarily render the property unmarketable or the value nominal.

Accordingly, we remand to the Tax Tribunal for reassessment of the value of those portions of the common amenity property acquired from the Vernor estate and Black River Ranch.

III

With respect to the property acquired from Monteith, the Tax Tribunal's findings were supported by competent, material, and substantial evidence. The tribunal properly considered the effect of the 1944 court decree on the marketability of the property.

Respondents argue that the decree was effective only as between petitioner and Monteith. Because Monteith is now a dissolved corporation, respondents assert that the decree is no longer enforce-

able. We disagree. The decree stated that its find-
ings and orders were for the benefit of all Canada
Creek members "as a class" and were determina-
tive of the rights of all members "as a class."
Petitioner was the only party who introduced
evidence concerning the meaning of the phrase "as
a class." Two witnesses testified that the language
referred to petitioner's members as property own-
ers rather than as shareholders. This interpreta-
tion is supported by the decree itself because, as
noted by the tribunal, the subject of the decree
was property rights.

Unlike the deed restrictions on the Black River
Ranch property, the restrictions on the Monteith
property go beyond merely limiting use of the
property to recreational purposes. The rights to
use and enjoy the property belong exclusively to
petitioner's members. Thus, the property is with-
out value to anyone but petitioner's members. See
*Muskegon Conservation Club v City of North
Muskegon,* 5 MTTR 161 (Docket No. 89028, March
6, 1987).

IV

Respondents contend that the restrictions in the
1944 decree are ineffective because the 1955 decree
declared petitioner the "absolute owner in fee" of
the common amenity property except for certain
mineral rights. We disagree. Petitioner maintains,
and respondents do not dispute, that the issue in
the 1955 proceedings was not land title but rather
ownership of mineral rights. The 1955 decree did
not address the use restrictions incorporated into
the 1944 decree. To the extent that the court
characterized petitioner as the "absolute owner in
fee," it may not be deemed to have exercised
authority over matters beyond the scope of those
proceedings.

Respondents also point out that the deed restrictions on the Monteith property can be waived under the provisions of petitioner's articles and bylaws, specifically, by a vote of only 12.51 percent of the members. However, the restrictions are imbedded in the chain of title. The articles and bylaws do not address the removal of deed restrictions. In order to remove a restriction in the chain of title, unanimous consent of those interested in the restriction is required. 2 Cameron, Michigan Real Property Law (2d ed), § 22.25, p 1031; 5 Powell, Real Property, ¶ 677, pp 60-118 — 60-122. Even assuming that a vote by as few as 12.51 percent of the members could remove the restrictions, the relevant inquiry regarding provisions for waiving existing restrictions is not whether the restrictions *could* be lifted, but rather whether they *would* be lifted. See *Presque Isle Harbor Ass'n v Presque Isle Twp,* 3 MTTR 397 (Docket No. 66598, February 4, 1985), citing *Moran v Grosse Pointe Twp,* 317 Mich 248, 255; 26 NW2d 763 (1947), and *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 148; 265 NW2d 182 (1978). The evidence before the Tax Tribunal showed that, from the petitioner's perspective, the chances of approving a sale of the common amenity property are remote given the voting practices of past and current members. From a potential buyer's perspective, the chances of approving the purchase of the property are equally remote because the mere existence of the deed restrictions in the chain of title, whether they are enforceable or could be waived, would necessitate an expensive lawsuit against petitioner's members to quiet title.

v

Respondents further dispute the tribunal's find-

ing that the assessed value of the platted lots already reflects the value of the common amenity property. However, the tribunal did not make such a finding. Although it found evidence that the market prices of the lots often incorporate a premium for the benefit of using the common amenity property, the tribunal was

> less than wholly convinced that the full measure of the value of the pro rata "membership rights", encompassing the rights to use of the miles of pristine common amenity property, is recognized in the [tax value] assessments of the individually owned, platted lots for the years in question.

Accordingly, and we believe appropriately, the tribunal encouraged the parties to seek a resolution of how to attribute the value of "membership rights" to the value of the platted lots for future assessments.

Affirmed in part, reversed in part, and remanded.