SHOTWELL v DEPARTMENT OF TREASURY

Docket No. 314860. Submitted May 14, 2014, at Lansing. Decided May 27,
2014, at 9:00 a.m. Leave to appeal sought.

The Department of Treasury assessed deficiencies against Deena Shot-
well with regard to the failure of People's True Taste (PTT), a
Kentucky corporation, to properly prepay the equity assessments for
projected taxes relating to its sales of tobacco products. The depart-
ment asserted that Shotwell was an officer of the corporation who
was liable for the corporation's tax obligations. Shotwell thereafter
petitioned in the Tax Tribunal, seeking cancelation of the assess-
ments on the basis that she was not a corporate officer at the relevant
time. The Tax Tribunal agreed with Shotwell and granted summary
disposition in her favor. The Department of Treasury appealed.

The Court of Appeals *held*:

1. Pursuant to 2014 PA 3, effective February 6, 2014, the
provisions of MCL 205.27a(5) apply to taxes related to tax assess-
ments issued to responsible persons before January 1, 2014. The
Legislature clearly expressed an intent that § 27a(5) apply retro-
actively. Because the statute has retroactive effect, the amend-
ments of § 27a(5) control the resolution of whether Shotwell is
personally liable for the assessments.

2. MCL 205.27a(15)(b) provides that a responsible person is an
individual who controlled, supervised, or was responsible for the
filing of tax returns or paying taxes during the time period of default.
The "time period of default" is defined in MCL 205.27a(15)(c) as the
tax period for which the business failed to file the return or pay the
tax due under § 27a(5) and through the later of the date set for the
filing of the tax return or making the required payment. Read
together, §§ 27a(15)(b) and (c) clearly provide that an officer may only
be held personally liable when he or she controlled, supervised , or
was responsible for filing tax returns or paying taxes during the time
period of default. An individual who did not control, supervise, or
bear responsibility for filing returns or paying taxes during the
relevant timeframe may not be held personally liable. An officer
assuming his or her duties after taxes come due and after the date for
filing the return has passed, is not a responsible person for the
corporation's failures in respect to these obligations and is not

personally liable under § 27a(5). Because Shotwell's appointment as president of PTT occurred long after the date for making the tax payments at issue in this case, Shotwell cannot be held personally liable as the president of PTT.

3. Shotwell was not a de jure corporate officer before her appointment as president of PTT. Even supposing that Shotwell could be characterized as a de facto corporate officer, she would not be subject to personal liability under § 27a(5), which imposes personal liability on corporate "officers" and does not mention de facto officers. The Legislature's reference to officers refers to those individuals who hold corporate positions in truth under the law, not merely with apparent authority.

Affirmed.

1. TAXATION — STATUTES — RETROACTIVE APPLICATION.

The Legislature, in enacting 2014 PA 3, effective February 6, 2014, which modified MCL 205.27a(5) and added MCL 205.27a(14), clearly expressed an intent that § 27a(5) apply retroactively to taxes administered before January 1, 2014.

2. TAXATION — WORDS AND PHRASES — RESPONSIBLE PERSON — TIME PERIOD OF DEFAULT.

A "responsible person," as the term is used in MCL 205.27a(5), is an individual who controlled, supervised, or was responsible for the filing of "corporate tax returns or paying taxes during the time period of default"; the "time period of default" means the tax period for which the business failed to file the return or pay the tax due under § 27a(5) and through the later of the date set for the filing of the tax return or making the required payment; a corporate officer that assumes his or her position after taxes come due and after the date for filing the return has passed is not a responsible person for the corporation's failure in respect to these obligations and is not personally liable for the obligations (MCL 205.27a(15)(b) and (c)).

3. CORPORATIONS — DE JURE OFFICERS.

A de jure officer, in the corporate context, is a duly authorized corporate officer; in Michigan, a corporation's bylaws determine what officers the corporation shall have and in what manner those officers shall be appointed.

4. TAXATION — CORPORATIONS — WORDS AND PHRASES — OFFICERS.

The Legislature's reference to corporate "officers" in MCL 205.27a(5) refers to those individuals who hold corporate positions in truth under the law, not de facto officers with apparent authority.

*Honigman Miller Schwartz and Cohn LLP* (by *June Summers Haas* and *Brian T. Quinn*) for Deena Shotwell.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Brian G. Green*, Assistant Attorney General, for the Department of Treasury.

Before: STEPHENS, P.J., and HOEKSTRA and METER, JJ.

PER CURIAM. In this litigation involving petitioner's personal liability for unpaid corporate tax obligations, respondent appeals as of right the order of the Michigan Tax Tribunal granting petitioner's motion for summary disposition under MCR 2.116(C)(10). Because petitioner cannot be held personally liable for the corporation's taxes pursuant to § 27a(5) of Michigan's revenue collection act, MCL 205.27a(5), and the tax tribunal properly granted her motion for summary disposition, we affirm.

People's True Taste (PTT) is a Kentucky corporation engaged in the manufacture and sale of tobacco products in several states, including Michigan. As a manufacturer engaged in the sale of tobacco in Michigan, PTT is subject to Michigan's Tobacco Products Tax Act (TPTA), MCL 205.421 *et seq*. Specifically, under the TPTA, certain tobacco manufacturers must prepay an "equity assessment" no later than March 1 for projected tobacco sales during the current calendar year. MCL 205.426d(5). While prepayment occurs no later than March 1 of each year, the equity assessment is then "collected and reconciled by April 15" of the following year. MCL 205.426d(4). At that time, the manufacturer is credited with any prepayment made the previous year. *Id*.

Until his death, petitioner's husband, William Shotwell, was the sole shareholder and director of PTT. William died intestate on March 17, 2007, survived by petitioner and his daughter, Suzanne Shotwell. On March 28, 2007, a Kentucky district court appointed petitioner and Suzanne coadministrators of William's estate. Shortly thereafter, on April 9, 2007, the court entered an order empowering petitioner and Suzanne to act independently on behalf of the estate and "to conduct any business that [William] could have conducted concerning" PTT. At that time, petitioner was not, however, an officer or director of PTT.

Nevertheless, empowered by the district court to act in William's stead, petitioner undertook activities on PTT's behalf. Related on PTT's tax obligations under the TPTA, on April 13, 2007, petitioner signed a Michigan Department of Treasury tobacco products tax filing for PTT listing herself as "co-owner" and checking a box indicating that her role was to "prepare tax returns." She also submitted a tobacco products license application, listing herself as "co-owner" of PTT and checking a box to confirm that all assessments, including taxes, had been paid in full.

On May 1, 2007, respondent informed PTT by letter that it had determined that a deficiency existed for the 2006 equity prepayment in the amount of $694,732.82 and it instructed PTT to pay the deficiency by May 31, 2007. In June of 2007, PTT made a partial payment of $50,000 to respondent. PTT did not appeal the 2006 assessment, and it became final on August 9, 2007. On October 23, 2007, petitioner executed a limited power of attorney, authorizing an attorney to address PTT's tax issues with respondent on PTT's behalf. On this instrument, petitioner indicated that her title was "president."

By the end of 2007, petitioner had become an official PTT employee and was receiving a salary. She still had not, however, been named as an officer or director of the corporation. Nevertheless, petitioner continued to conduct business on PTT's behalf. For example, in 2008, petitioner signed several tax filings on PTT's behalf, including a federal income tax return and a Kentucky Schedule Q on which petitioner signed as "principal officer or chief accounting officer."

William's estate closed on March 26, 2008, at which time petitioner's duties as coadministrator ended. At that time, petitioner and Suzanne each received one-half of the total shares in PTT. On April 11, 2008, PTT filed its annual report with the Kentucky Secretary of State. Although there had still been no formal appointment, the document listed petitioner as president and director of the corporation.

On March 14, 2008, respondent notified PTT that an additional assessment of $55,965.47 was due by April 15, 2008. The amount represented the reconciliation payment for PTT's 2007 tobacco sales in Michigan. PTT did not appeal this assessment and it became final on May 27, 2008.

Eventually, on October 29, 2010, petitioner and Suzanne became directors of PTT by action of the shareholders. At the same time, petitioner also became president and treasurer of PTT. Upon their appointment to these positions, petitioner and Suzanne ratified and approved their previous activities undertaken on behalf of PTT. In particular, the resolution for their appointment as directors provided that: "all acts of Deena Shotwell and/or Suzanne Shotwwell [sic] taken in their capacity as directors of the Corporation's [sic] since the death of [William] Shotwell . . . are ratified." Similarly, the resolution appointing officers provided

that "all acts of Deena Shotwell and/or Suzanne Shot-wwell [sic] heretofore taken in their capacity as officers of the Corporation . . . are ratified and approved." In an e-mail sent by PTT's attorney on October 29, 2010, respondent learned of petitioner's appointment as director, president, and treasurer.

Relying on § 27a(5), on February 21, 2012, respondent assessed deficiencies against petitioner for PTT's unpaid tax assessments, asserting that petitioner was an officer liable for the corporation's tax obligations. Petitioner sought cancelation of those assessments in the Michigan Tax Tribunal, ultimately moving for summary disposition under MCR 2.116(C)(10) on the basis of the assertion that petitioner was not a corporate officer at the relevant time. The tribunal granted petitioner's motion for summary disposition, reasoning that petitioner was not an officer of PTT during the relevant period in which the taxes were due. Thus, the Tax Tribunal reasoned, she was not a responsible corporate officer for the assessment at issue. Respondent now appeals in this Court.

On appeal, respondent challenges the Tax Tribunal's grant of summary disposition pursuant to MCR 2.116(C)(10). A trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(10) is a question of law reviewed de novo. *Bingham Twp v RLTD R Corp*, 463 Mich 634, 641; 624 NW2d 725 (2001). A motion under MCR 2.116(C)(10) tests the factual underpinnings of a claim, and is properly granted as a matter of law where, viewing the evidence in a light most favorable to the nonmoving party, there remains no genuine issue regarding any material fact. *Coblentz v Novi*, 475 Mich 558, 567-568; 719 NW2d 73 (2006). "A genuine issue of material fact exists when the record, giving the benefit of reasonable

doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Also raised on appeal are issues that require interpretation of § 27a(5) to determine whether petitioner may be held personally liable. The interpretation and application of a statutory provision presents a question of law that we review de novo. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002).

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). The intent of the Legislature is discerned from the plain language of the statute, affording words their common, ordinary meaning. *Veenstra*, 466 Mich at 160. If the statute is unambiguous, this Court presumes that the Legislature intended the meaning plainly expressed, and further judicial construction is neither permitted nor required. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Typically, tax laws are construed against the government. *DeKoning v Dep't of Treasury*, 211 Mich App 359, 361; 536 NW2d 231 (1995). Generally, when construing a tax provision, this Court will defer to the Tax Tribunal's interpretation of the statute. *Grimm v Dep't of Treasury*, 291 Mich App 140, 145; 810 NW2d 65 (2010).

Respondent first contends that petitioner is personally liable for PTT's 2006 and 2007 taxes on the basis of her appointment as president of PTT on October 29, 2010. In making this argument, respondent relies on former § 27a(5), which, at the time of proceedings before the Tax Tribunal, provided, in part, as follows:

If a corporation . . . liable for taxes administered under this act fails for any reason to file the required returns or to pay the tax due, any of its officers . . . who the department

> determines, based on either an audit or an investigation, have control or supervision of, or responsibility for, making the returns or payments is personally liable for the failure. The signature of any corporate officers . . . on returns or negotiable instruments submitted in payment of taxes is prima facie evidence of their responsibility for making the returns and payments.

Emphasizing that, by its plain terms, the statute holds an officer personally liable for either a corporation's failure to file a return *or* its failure to pay taxes, respondent maintains that PTT's failure to pay the outstanding tax debt after petitioner's appointment as president provides a sufficient basis for the imposition of personal liability, regardless of the fact that the tax liability was incurred before her appointment as president on October 29, 2010. That is, because the taxes continue to be "due" and petitioner is now responsible for PTT's payment of taxes, respondent asserts petitioner may be held individually liable for PTT's tax obligations. Petitioner, in contrast, argues that the statute's reference to *"the* failure" (emphasis added) denotes a specific failure to pay taxes when they come due, rather than an ongoing failure to pay on an outstanding obligation, meaning that only an officer responsible for the filing of returns or payment of taxes at the time of the initial failure to fulfill these obligations may be held personally liable for the corporation's tax obligations.

In making their arguments, neither party addresses recent amendments of § 27a(5) which, if applied retroactively, make plain that petitioner cannot be held personally liable for taxes coming due before her appointment as an officer.

Whether a statute applies retroactively presents a question of statutory interpretation that we consider de novo. *Frank W Lynch & Co v Flex Technologies, Inc,* 463

Mich 578, 583; 624 NW2d 180 (2001). In making a determination regarding whether retroactive application of a statute is appropriate, we focus on legislative intent as expressed in the plain statutory language. *Id.* However, unless a contrary intent is clearly manifested, statutes are presumed to operate prospectively. *Id.*

Relevant to the present case, among other changes, 2014 PA 3 (effective February 6, 2014) modified § 27a(5) and added § 27a(14) to Michigan's revenue collection act. Section 27a(14) provides:

> [Section 27a(5)] applies to all the following taxes administered under this act:
>
> (a) For assessments issued to responsible persons before January 1, 2014, taxes administered under this act.

By stating that § 27a(5) applies to taxes related to tax assessments issued to responsible persons *before* January 1, 2014, the Legislature clearly expressed an intent that § 27a(5) apply retroactively. Indeed, the amendments were approved by the Governor on January 30, 2014, and took effect February 6, 2014, yet they concerned, not only a prospective timeframe, but also the applicability of § 27a(5) to past tax assessments issued before the act's effective date and, more particularly, before January 1, 2014. Given this clear indication that the current version of § 27a(5) should apply to taxes administered before January 1, 2014, we conclude that the statute has retroactive effect. Consequently, the amendments of § 27a(5) control resolution of petitioner's personal liability.

In particular, owing to changes enacted by 2014 PA 3, § 27a(5) now provides, in relevant part:

> If a business liable for taxes administered under this act fails, for any reason after assessment, to file the required returns or to pay the tax due, any of its officers . . . who the

department determines, based on either an audit or an investigation, is a responsible person is personally liable for the failure for the taxes described in subsection (14). . . . The sum due for a liability may be assessed and collected under the related sections of this act. . . . The department has the burden to first produce prima facie evidence as described in subsection (15) or establish a prima facie case that the person is the responsible person under this subsection through establishment of all elements of a responsible person as defined in subsection (15).

As used in § 27a(5), a "responsible person" is defined by § 27a(15)(b), which provides, in relevant part:

"Responsible person" means an officer, member, manager of a manager-managed limited liability company, or partner for the business who controlled, supervised, or was responsible for the filing of returns or payment of any of the taxes described in subsection (14) during the time period of default and who, during the time period of default, willfully failed to file a return or pay the tax due for any of the taxes described in subsection (14).

By its plain terms, § 27a(15)(b) indicates that a responsible person is an individual "who controlled, supervised, or was responsible" for the filing of returns or paying taxes "during the time period of default . . . ." What constitutes the "time period of default" is set forth in § 27a(15)(c), which states:

"Time period of default" means the tax period for which the business failed to file the return or pay the tax due under subsection (5) and through the later of the date set for the filing of the tax return or making the required payment.

Read together, these provisions clearly provide that an officer may only be held personally liable when he or she controlled, supervised, or was responsible for filing returns or paying taxes during "the time period of default," which consists of the relevant tax period extending to "the

later of the date set for the filing of the tax return or making the required payment." Conversely, it follows that an individual who did not control, supervise, or bear responsibility for filing returns or paying taxes during the relevant timeframe may not be held personally liable. Thus, an officer assuming his or her position after taxes come due and after the date for filing the return has passed, is not a responsible person for the corporation's failures in respect to these obligations and is, therefore, not personally liable under § 27a(5).

Applying this conclusion to petitioner's case, the date for the collection and reconciliation of the equity assessment owed under the TPTA is April 15 of the applicable tax year, meaning that the sums PTT owed for the 2006 and 2007 equity assessments were due on April 15, 2007, and April 15, 2008, respectively. MCL 205.426d(4). Because petitioner's appointment as president occurred in 2010, long after the date for making the required payments had passed, she cannot be held personally liable on the basis of her official appointment as president of PTT.

Next, respondent argues that petitioner may be held personally liable because she became a de jure corporate officer in 2007 when the district court entered an order authorizing her to take action on PTT's behalf commensurate with the authority William could have exercised. We disagree.

By definition, in the corporate context, a de jure officer is a "duly authorized corporate officer." *Black's Law Dictionary* (9th ed), p 1194. In Kentucky, as in Michigan, a corporation's bylaws determine what officers the corporation shall have and in what manner those officers shall be appointed. Ky Rev Stat 271B.8-400. Considering that the manner in which corporate officers become duly authorized is dictated by a corpo-

ration's bylaws, the Kentucky district court's general grant of authority to petitioner to administer the estate does not render her a de jure officer. That is, although respondent is correct that the Kentucky district court granted petitioner authority to act on PTT's behalf, this grant is not an appointment to hold a corporate office as provided for in PTT's bylaws, nor is it an appointment in the manner prescribed by PTT's bylaws. Indeed, respondent makes no effort to explain how the Kentucky district court's grant of authority comported with PTT's bylaws, or even what corporate office petitioner should be presumed to have held. Absent petitioner's appointment as an officer in accordance with PTT's bylaws, which apparently did not occur until October 2010, we cannot see that petitioner qualified as a de jure corporate officer. Consequently, respondent's argument in this regard is without merit.

Alternatively, respondent asserts that, even if not a de jure corporate officer, petitioner's conduct following William's death was of a kind or sort that she should be recognized as a de facto corporate officer and held personally liable for PTT's taxes in her capacity as a de facto officer. In contrast to a de jure officer, a de facto officer is one "acting under color of right and with apparent authority, but who is not legally a corporate officer." *Black's Law Dictionary* (9th ed), p 1194. Michigan has long acknowledged the existence of de facto corporate officers, recognizing that a corporation is bound by the acts of its officers de facto; and it need not be shown that they were regularly elected, in order to make their acts binding upon the corporation. *Cahill v Kalamazoo Mut Ins Co*, 2 Doug 124 (Mich, 1845).[1] A de facto officer has similar authority

---

[1] Kentucky likewise acknowledges the authority of de facto corporate officers. See, e.g., *Porter's Adm'r v Dulin Oil Co*, 242 Ky 34; 45 SW2d 495 (1932).

to a de jure officer, and enjoys the protections from personal liability generally afforded by the corporate form. See *Martin v Miller*, 336 Mich 265, 277; 57 NW2d 878 (1953). To be a de facto corporate officer, an individual "must be in possession of the office, and be exercising its duties under an appearance of right, while not being an officer . . . de jure, by reason of ineligibility or lack of qualification, or being unlawfully elected." 19 CJS, Corporations, § 560 (2007), pp 45-46 (footnotes omitted).

In this case, the facts could reasonably give rise to the conclusion that petitioner was a de facto officer of the corporation following William's death. Acting on the authority of the district court, petitioner signed numerous documents on PTT's behalf, including tax-related documents, she made decisions for PTT, and she indicated her status at various times as "co-owner," "president," and "principal officer or chief accounting officer." She also drew a salary from the corporation. When the estate was settled, petitioner and Suzanne were the only shareholders, they proceeded to formally elect themselves as directors and officers, and, tellingly, they ratified their previous conduct "heretofore taken in their capacity *as officers* . . . ." (Emphasis added.) These facts could reasonably give rise to the conclusion that petitioner qualified as a de facto officer with responsibility for PTT's taxes. Consequently, a material question of fact may have remained regarding petitioner's status as a de facto officer and her role in the preparation of PTT's taxes.

However, even accepting this possibility, we cannot conclude that petitioner may be held personally liable under § 27a(5) on this basis because to do so would require us to extend the personal liability imposed by the statute beyond its express parameters. That is, in certain circumstances, § 27a(5) imposes personal liabil-

ity on corporate "officers"; it makes no mention of "de facto officers," and we decline to read language into the statute that the Legislature did not include. See *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Had the Legislature intended to include de facto officers as individuals who could be personally liable, it could have so specified.[2] See, e.g., MCL 456.51 (discussing trustees, both de jure and de facto); MCL 487.3335(2) (discussing duties of "officers and directors de facto" following expiration of corporate term). Absent such an indication, we are persuaded that the Legislature's reference to "officers" refers to those individuals who hold corporate positions in truth under the law, not merely with apparent authority. For this reason, even supposing that petitioner could be characterized as a de facto officer, she would not be subject to personal liability under § 27a(5).

Because no material question of fact exists regarding whether petitioner could be held personally liable pursuant to § 27a(5), the Tax Tribunal properly granted petitioner's motion for summary disposition pursuant to MCR 2.116(C)(10).

Affirmed. Petitioner, being the prevailing party, may tax costs pursuant to MCR 7.219.

STEPHENS, P.J., and HOEKSTRA and METER, JJ., concurred.

---

[2] Indeed, as a general matter, corporations are creatures of statute, and it is to " 'all the world, *except the State*' " that de facto status exists. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 155; 792 NW2d 749 (2010) (emphasis added; citations omitted). The state remains free to complain when a corporation fails to comply with statutes governing corporations and their operation. See *Tisch Auto Supply Co v Nelson*, 222 Mich 196, 200; 192 NW 600 (1923). The state, not being bound by de facto statuses in the corporate context, would be expected to make clear those situations in which it will acknowledge de facto status.