*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMJED DAOUD,

Petitioner-Appellant,

v

MICHIGAN DEPARTMENT OF TREASURY,

Respondent-Appellee.

UNPUBLISHED
December 3, 2020

No. 351087
Michigan Tax Tribunal
LC No. 19-000143-TT

Before: REDFORD, P.J., and RIORDAN and TUKEL, JJ.

PER CURIAM.

Petitioner, Amjed Daoud, appeals by right the opinion and judgment of the Michigan Tax Tribunal ("MTT") affirming respondent's determination that petitioner was a "responsible person" under the statute governing corporate officer tax liability, MCL 205.27a(5). We affirm.

## I. FACTS & PROCEDURAL HISTORY

In 2014, Sam Daoud sought to open a bar and restaurant but he was ineligible to receive a liquor license which was necessary to operate the business. His brother, petitioner, agreed to title the business in his name and apply for the liquor license. To this end, petitioner formed TK of Canton, LLC (TK) by executing an Operating Agreement and filing Articles of Organization, which named petitioner as TK's resident agent. The Operating Agreement named petitioner as sole member with 100 percent ownership of TK and designated Sam a "manager." Petitioner also executed on TK's behalf a form tilted Registration for Michigan Taxes. Petitioner signed the form as "president."

TK, Sam, and petitioner also entered into a Management Agreement, which further delineated Sam and petitioner's respective roles in relation to TK. The Management Agreement designated Sam as an "independent contractor" manager of TK and directed that Sam would oversee the management and daily operation of TK, including payment of operating expenses, and that Sam would receive the balance of TK's net profits after payment of expenses. The Management Agreement further dictated that Sam would "oversee, arrange for, and assume responsibility" for timely payment of TK's taxes and that petitioner could terminate the Management Agreement in the event that Sam violated it, including for failure to pay TK's taxes.

-1-

Additionally, in 2014 and again in 2016, petitioner executed powers of attorney on behalf of TK authorizing certain individuals to discuss all TK's tax matters with Treasury.

Unbeknownst to petitioner, TK began experiencing financial difficulties and Sam stopped paying TK's sales and withholding taxes. For the 2015 tax year, TK filed its tax returns but did not remit any tax payments and Sam did not inform petitioner that the 2015 taxes had not been paid until such time that TK was forced to close in September 2016 due to nonpayment of rent. Having not received the 2015 tax payments, respondent Department of Treasury issued tax assessments for that tax year. When TK again failed to remit the taxes, respondent sought to hold petitioner, as the sole member of TK, derivatively liable for TK's sales and withholding taxes under MCL 205.27a(5), the statute governing corporate officer tax liability.

At an informal conference hearing on the matter, petitioner argued that he was not liable for the taxes under the statute because he was not the person responsible for payment of TK's taxes. Specifically, petitioner asserted that he never signed any of TK's tax returns, that Sam was solely responsible for TK's finances and tax payments under the terms of the Management Agreement, and that petitioner had no access to TK's financial documents and he did not know that TK's taxes had not been paid. Respondent countered that petitioner, as the sole member of TK, had all responsibility as a corporate officer over TK because he had signed TK's Registration for Michigan Taxes form as president and sole officer of TK, executed various powers of attorney on TK's behalf, and executed and amended TK's Articles of Incorporation. The hearing referee found that respondent made a prima facie case that petitioner was a "responsible person" under MCL 205.27a(5) and that petitioner failed to rebut respondent's evidence. Thereafter, respondent issued final assessments against petitioner for the amounts due, including penalties and interest.

Petitioner appealed to the MTT. Following a hearing on the matter, the MTT issued a preliminary opinion which concluded that respondent had established a prima facie case that petitioner was a "responsible person" under the statute and stated:

> There is no dispute that [p]etitioner was a member of the LLC, in fact, he was the sole member. By signing the Registration for Michigan taxes, [p]etitioner became responsible for filing the returns and paying taxes. Petitioner was aware of the responsibility to pay sales tax, and given that [p]etitioner was the sole member of the LLC, and thus the only person responsible for the filing of taxes, the [MTT] concludes that [r]espondent has established a prima facie case that the failure to pay the taxes was intentional or reckless.

The MTT rejected petitioner's claim that the Management Agreement, which delegated all authority to Sam for management of TK's finances and payment of taxes, rebutted respondent's prima facie case because petitioner "consciously disregarded the risk that taxes would not be paid" when he "delegated responsibility to a convicted felon, but failed to inquire whether taxes were being paid." Accordingly, the MTT affirmed respondent's final assessments.

Petitioner filed exceptions to the preliminary opinion and argued that the MTT adopted an erroneous legal standard by relying on *Valentino v Dep't of Treasury*, Docket No. 14-005039-R (October 4, 2017) to conclude that petitioner had willfully failed to pay taxes. Petitioner argued that *Valentino* was factually distinguishable because in that case, the corporate officer had

delegated tax payments to a "mere employee" who could not be held responsible, whereas in this case, Sam could be held responsible for nonpayment of taxes under the Management Agreement. Petitioner further argued that he had not acted recklessly given that he had ensured that taxes would be paid by entering into the Management Agreement and that Sam had actively withheld information regarding TK's finances.

The MTT issued a final judgment and concluded that—to the extent petitioner argued that a third party (Sam) was contractually bound to make the tax payments—it lacked jurisdiction to consider contractual disputes. With respect to *Valentino*, the MTT noted that petitioner attempted to distinguish that case on the basis that Sam was a contractor and not an employee to whom authority had been delegated, but petitioner had provided no support for his assertion and had failed to meaningfully distinguish *Valentino*. Accordingly, petitioner failed to show good cause to modify the preliminary judgment and the MTT adopted it as its final decision.

Petitioner moved for reconsideration, asserting that respondent had failed to show that petitioner was a "responsible person" or had "willfully" failed to pay the taxes. The MTT denied the motion because petitioner failed to demonstrate palpable error. This appeal followed.

## II. STANDARDS OF REVIEW

Review of the MTT's decision is limited. *Autodie, LLC v Grand Rapids*, 305 Mich App 423, 427; 852 NW2d 650 (2014). In the absence of a claim of fraud, we review the MTT's decision "for the misapplication of law or the adoption of a wrong legal principle." *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 70; 894 NW2d 535 (2017). Factual findings are final if they are supported by competent, material, and substantial evidence on the whole record. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). An error of law, or misapplication of the law, occurs when the MTT's decision is not supported by competent, material, and substantial evidence. *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 586; 854 NW2d 172 (2014). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision, being more than a mere scintilla, but less than a preponderance of the evidence." *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 431; 906 NW2d 482 (2017) (citation and quotation marks omitted).

We review de novo matters of statutory interpretation. *SBC Health Midwest, Inc*, 500 Mich at 70. When construing the meaning of statutory language, our goal is to discern the Legislature's intent. *TMW Enters v Dep't of Treasury*, 285 Mich App 167, 172; 775 NW2d 342 (2009). The best and most reliable indicator of that intent is the plain language used and, thus, the starting point for analysis is the language of the text itself. *Id*. We view the statutory language in context, considering "both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation and quotation marks omitted).

## III. ANALYSIS

Petitioner argues that the MTT committed error requiring reversal when it concluded that petitioner was liable for taxes pursuant to MCL 205.27a(5). We disagree.

Under Michigan's Limited Liability Corporation Act, MCL 450.4101 *et seq.*, members of a limited liability company (LLC) are generally not personally liable for the obligations or debts of the LLC. MCL 450.4501(4). However, MCL 205.27a(5), a provision of the Revenue Act, MCL 205.1 *et seq.*, governing corporate officer tax liability, provides an exemption to this general immunity and imposes personal liability on corporate officers who are "responsible persons." That subsection provides:

> If a business[11] liable for taxes administered under this act fails . . . to pay the tax due, any of its . . . members . . . who the department determines . . . is a responsible person is personally liable for the failure for the taxes [enumerated herein.] [MCL 205.27a(5).]

MCL 205.27a(5) also establishes respondent's burden of proof as a prima facie standard:

> The department has the burden to first produce **prima facie evidence** as described in subsection (15) **or** establish a **prima facie case** that the person is the responsible person under this subsection through establishment of all elements of a responsible person as defined in subsection (15). [MCL 205.27a(5) (emphasis added).]

"In general, 'or' is a disjunctive term, indicating a choice between two alternatives . . . ." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010). Respondent can proffer the specified "prima facie evidence" described in subsection (15), see MCL 205.27a(15)(b), to establish that petitioner is a "responsible person" subject to personal liability. Alternatively, respondent can establish a "prima facie case" that petitioner meets all the definitional elements of a "responsible person" under subsection (15). Additionally, MCL 205.27a(15)(b) provides:

> "Responsible person" means an officer, member, manager of a manager-managed limited liability company, or partner for the business who controlled, supervised, or was responsible for the filing of returns or payment of any of the taxes described in subsection (14) during the time period of default and who, during the time period of default, willfully failed to file a return or pay the tax due for any of the taxes described in subsection (14). The signature, including electronic signature, of any officer, member, manager of a manager-managed limited liability company, or partner on returns or negotiable instruments submitted in payment of taxes of the business during the time period of default, **is prima facie evidence** that the person is a responsible person. A signature, including electronic signature, on a return or negotiable instrument submitted in payment of taxes after the time period of default alone **is not prima facie evidence** that the person is a responsible person for the time period of default but may be considered along with other evidence to make a prima facie case that the person is a responsible person. With respect to a return or negotiable instrument submitted in payment of taxes before the time period of default, the signature, including electronic signature, on that document along with

---

[11] For purposes of this provision, "business" is defined, in part, to include limited liability companies. MCL 205.27a(15)(a).

evidence, other than that document, sufficient to demonstrate that the signatory was an officer, member, manager of a manager-managed limited liability company, or partner during the time period of default **is prima facie evidence** that the person is a responsible person. [Emphasis added.]

Here, petitioner did not sign any tax returns or negotiable instrument in payment of taxes on behalf of TK during the period at issue or otherwise. Therefore, because it lacked prima facie *evidence* that petitioner was a responsible person, respondent was required to establish a prima facie *case*. As noted, to make a prima facie case, MCL 205.27a(5) directs that respondent establish all the elements of a "responsible person as defined in subsection (15)." Subparagraph (c) and (d) define the terms "period of default" and "willful" as used in subparagraph (b):

(c) "Time period of default" means the tax period for which the business failed to file the return or pay the tax due under subsection (5) and through the later of the date set for the filing of the tax return or making the required payment.

(d) "Willful" or "willfully" means the person knew or had reason to know of the obligation to file a return or pay the tax, but intentionally or recklessly failed to file the return or pay the tax. [MCL 205.27a(15)(c)-(d).]

Thus, reading subparagraphs (b), (c), and (d) together, to establish a prima facie case of corporate officer tax liability, respondent must show that (1) the officer controlled, supervised, or was responsible for the payment (or filing) of the enumerated taxes during the tax period for which the business failed to pay (or file) the tax and, (2) during that period, the officer "willfully" failed to pay (or file) the tax. See *Shotwell v Dep't of Treasury*, 305 Mich App 360, 369; 853 NW2d 414 (2014), vacated in part on other grounds 497 Mich 977 (2015) (addressing the first element of this test). Once respondent establishes a prima facie case (or alternatively produces prima facie evidence), the burden shifts to the petitioner to provide rebuttal evidence. See *Yoost v Caspari*, 295 Mich App 209, 225-226; 813 NW2d 783 (2012) (acknowledging that "prima facie" is a legal term envisioning sufficient evidence to support a fact or given set of facts, but such facts may be rebutted with opposing evidence).

The evidence respondent submitted in the instant case reflects that petitioner controlled, supervised, and was responsible for the payment of TK's taxes during the time period at issue. Petitioner filed TK's Articles of Organization listing himself as sole member of the LLC, registered TK for Michigan sales and withholding taxes, signed the form as TK's "president," and executed a power of attorney effective during the default period which allowed a third party to review TK's records for tax purposes Petitioner also executed TK's Operating Agreement, under which petitioner was listed as the sole member with 100 percent interest in TK's assets. In his capacity as sole member, petitioner entered into a Management Agreement, in which he directed TK's manager, Sam, to file and pay TK's taxes. In the event Sam failed to do so, petitioner retained the right to terminate the Agreement. All of these actions reflect petitioner's position as sole member of the LLC holding responsibility over all of TK's activities. On this record, sufficient competent evidence supports the MTT's finding that petitioner maintained supervision, control, and responsibility over TK's tax matters during the default period.

On appeal, petitioner argues that the Operating Agreement and Management Agreement rebut respondent's evidence that petitioner had control over TK's tax payments because the documents demonstrate that petitioner contractually delegated his authority to Sam to manage TK's operations, including filing and payment of taxes, thereby constraining petitioner's authority to control, supervise, or be responsible for TK's taxes. However, petitioner does not cite any legal authority that a corporate officer's broad delegation of authority to a subordinate divests that officer of their corporate authority or responsibilities concerning tax payments. Rather, our jurisprudence suggests the contrary conclusion: that a corporate officer with supervisory powers over tax payments cannot escape personal liability for the LLC's unpaid taxes by delegating those tax duties to a third party. See *Spithogianis v Limbach*, 53 Ohio St 3d 55, 57; 559 NE2d 449 (1990) (corporate officers responsible for business's tax payments cannot escape personal liability for tax failure by delegating duties to others); *Livingstone v Dep't of Treasury*, 434 Mich 771, 794; 456 NW2d 684 (1990) (recognizing that the transmutation of business taxes to corporate officer tax liability reflects the intent to recoup unpaid business tax); *Can Creek Ranch Ass'n, Inc v Montmorency Twp*, 206 Mich App 498, 504; 522 NW2d 690 (1994) ("Neither a private individual nor a corporation may rely on self-imposed restrictions on the sale of property as a means of avoiding taxes.").

Moreover, the Operating Agreement and Management Agreement reserve power in petitioner as sole member of TK, which evinces a clear intent to preserve petitioner's control over the LLC. Under the Management Agreement, for example, petitioner could terminate Sam as manager for, *inter alia*, violation of any terms of the Agreement, including nonpayment of taxes. Likewise, while the Operating Agreement granted Sam management duties, it subjected certain decisions to petitioner's approval and required that at least annual financial reports be provided to petitioner. Consequently, these agreements constitute substantial, competent, and material evidence supporting the MTT's finding that petitioner, as the sole member of TK, ultimately was responsible for payment of TK's taxes. Although petitioner views the legal effect of these agreements differently, the MTT's factual finding is supported by competent, material, and substantial evidence, and it is therefore final. *Curis Big Boy, Inc v Dep't of Treasury*, 206 Mich App 139; 520 NW2d 369 (1994).[2]

Petitioner next argues that the MTT committed an error of law by considering petitioner's signature on the Registration of Michigan Taxes form, as well as his signature on the power of attorney, as establishing a "prima facie case." Petitioner points out that MCL 205.27(15)(b) references the "signature requirement" three times—listing only two types of signed documents, a return and negotiable instruments signed in payment of taxes. Petitioner then argues that to a establish a "prima facie case," only a signed return or a negotiable instrument for payment of taxes during the default period will suffice. However, petitioner misconstrues the statute. As explained above, respondent may establish corporate officer tax liability by producing prima facie *evidence*

---

[2] Petitioner also argues that the MTT erred by not considering the Management Agreement as binding Sam to be liable for TK's taxes, based on its supposed reasoning that it lacked jurisdiction to do so. Petitioner misreads the MTT's statement with respect to its jurisdiction. The MTT merely noted that it had no authority to decide a contractual dispute that could arise between Sam and petitioner on the basis of the Management Agreement.

that the person is a responsible person or by presenting a prima facie *case* that the person is a responsible person. Signed returns and negotiable instruments for payment of taxes during the period at issue are relevant to proffering prima facie evidence that a person is a responsible person. See MCL 205.27a(15)(b). When respondent lacks such prima facie evidence, it may establish corporate officer tax liability by showing a prima facie case, i.e., that the person was an officer with supervisory powers over the filing of returns or payment of taxes and willfully failed to file or pay the taxes. See MCL 205.27a(5) and (15)(b).

Contrary to petitioner's assertion, signed tax returns and negotiable instruments for payment of tax are not required to establish a prima facie case. Rather, respondent may rely on other evidence to establish the elements of a "responsible person." In this instance, a signed registration for Michigan businesses taxes and an executed power of attorney was relevant and petitioner has cited no authority supporting the proposition that such documents should be disregarded. Moreover, to adopt petitioner's construction of the statute as requiring signed tax returns and signed negotiable instruments for payment of taxes during the default period to establish a prima facie case would render superfluous the substantive requirements for proving a prima facie case. We avoid a statutory construction that renders statutory language redundant or nugatory. *Karpinski v St John Hosp*, 238 Mich App 539, 543; 606 NW2d 45 (1999) ("When construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render the statute, or any part of it, surplusage or nugatory.").

Petitioner next argues that the MTT erred in construing the willfulness requirement. According to petitioner, the MTT effectively held that a corporate officer's broad delegation of taxing responsibility is *ipso facto* reckless, thereby transforming the statute governing corporate officer tax liability into a strict liability statute. Petitioner contends that the MTT erroneously relied on *Valentino*, which is distinguishable from the instant case because petitioner was not involved in TK's daily operations. We disagree.

The MTT did not hold that a delegation of taxing authority to a subordinate, in and of itself, constitutes "recklessness" within the meaning of the statute. Instead, the MTT considered the delegation by itself to be a mere risk, not enough alone to establish a conscious disregard or indifference to whether taxes had been paid. To reach its ultimate conclusion, the MTT considered other more pivotal circumstances in conjunction with the delegation, mainly whether petitioner took any steps to ensure or confirm that the taxes had been paid under his delegation of authority. Consequently, petitioner is incorrect that the MTT somehow transformed MCL 205.27a(5) into a strict liability statute, so as to subject every corporate officer who delegates taxing authority to personal tax liability.

To the extent petitioner argues that the MTT erred by relying on *Valentino* because that case is factually distinguishable, the differences between that case and the instant matter are inapposite and not outcome-determinative. In *Valentino*, the petitioner was an officer of the business, he had signed the business's tax returns, and he knew that the business had fallen behind on tax payments in the past and entered into a payment plan. *Valentino*, slip op at 5, 7. The officer had delegated authority to an employee to pay the taxes using the petitioner's signature, but that employee had quit during the period at issue and the taxes had gone unpaid. *Id*. at 5. Despite this knowledge, the officer did not look at the business's books and records to see what was due and did not consult the business's accounts to see if the taxes had been paid in his name. *Id*. at 7. Here,

just as in *Valentino*, petitioner was in a position as the sole member to find out if TK's taxes were being paid but he took no steps to do so. Thus, petitioner's efforts to distinguish *Valentino* are unavailing.

In sum, sufficient competent evidence supported the MTT's finding that petitioner willfully failed to pay TK's taxes and petitioner fails to demonstrate that the MTT erroneously construed and applied the statute.

## IV. CONCLUSION

The MTT properly concluded that petitioner was a "responsible person" under the statute governing corporate officer tax liability, MCL 205.27a(5). Accordingly, we affirm.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Jonathan Tukel